## Carol Johnson v. Robert Johnson

[580 A.2d 503]

No. 89-050

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed August 10, 1990

*Cheney, Brock & Saudek, P.C.,* Montpelier, for Plaintiff-Appellee.

*Valsangiacomo, Detora, McQuesten, Rose & Grearson,* Barre, for Defendant-Appellant.

**Dooley, J.** Carol (plaintiff) and Robert (defendant) Johnson were divorced in December, 1988 by the Washington Superior Court following a sixteen-year marriage. At the time of the divorce, plaintiff was thirty-nine years of age and defendant was thirty-eight years of age. Defendant appeals from the trial court's property distribution and maintenance award orders. We affirm.

The parties met while they were college students and were married several years later in August of 1972. At the time the parties married, plaintiff was a school teacher and defendant was a medical student. Plaintiff paid for part of defendant's second-year tuition and all of his third- and fourth-year tuition. The parties moved to Vermont in 1976 so that defendant could complete his residency at the University of Vermont. From the time the parties moved to Vermont, plaintiff has been a full-time homemaker, although she is certified to teach and has occasionally been employed as a substitute teacher. Defendant has enjoyed a very successful career as a physician. The parties have three children, ages eight, eleven and thirteen.

Plaintiff became emotionally and physically involved with another man in April 1987. Defendant first realized there was a problem with the marriage in July 1987 when plaintiff told him

that she was not sure whether she loved him. Plaintiff's affair was inadvertently made known to defendant in August 1987 by a minister to whom plaintiff had made the admission. At that time, defendant suffered from emotional difficulties, but has since undergone therapy and is now able to maintain a full work schedule. The trial court found that plaintiff was at fault for the breakup of the marriage.

At the time of the divorce proceedings, the trial court found that defendant's estimated earnings were $165,000 ($120,000 base salary and the remainder in bonuses) plus an additional amount contributed to his pension and profit-sharing plan for a gross income of approximately $210,000. In addition to his salary, defendant also receives health and dental insurance, disability insurance, a car purchased by the corporation, ten weeks of vacation, and various other benefits. As a result of this income, the court found that during the marriage, the parties enjoyed an above-average standard of living:

> They skied, purchased high quality clothing, enjoyed superior diet, dined out frequently, acquired many material possessions, lived in an above-average neighborhood, had excellent housing, and enjoyed a sufficient income so that plaintiff did not need to work outside the home. The plaintiff was available for full-time homemaker services, including meeting the children's needs for their growth and development by actively participating in their lives and schedules.

Aside from defendant's income, the court also found that the parties had significant assets, including personal property, defendant's profit-sharing and pension funds, individual retirement accounts, and their home.

The court granted the divorce on the ground that the parties had lived separate and apart for a period in excess of six months and a resumption of marital relations was not reasonably probable, in accordance with 15 V.S.A. § 551(7). The court accepted the parties' stipulation with respect to the children and ordered that legal and physical responsibility be shared, although plaintiff was to exercise physical responsibility for the majority of the year. Furthermore, defendant was ordered to pay to plain-

tiff child support in the amount of $625 per child per month until the children become of age or terminated their secondary education. The court then divided the marital estate in half, with plaintiff and defendant receiving assets with a value of $257,500 and $261,000 respectively. Finally, plaintiff was awarded rehabilitative maintenance in the amount of $1,500 per month for ten years.

Defendant raises four issues on appeal: (1) the trial court erred in awarding plaintiff rehabilitative maintenance because the uncontroverted evidence shows that she voluntarily chooses not to support herself through appropriate employment; (2) the unalterable ten-year period fixed for the rehabilitative maintenance was an abuse of discretion; (3) the failure to terminate the maintenance upon remarriage was an abuse of discretion; and (4) the court's even distribution of the marital estate, in light of its maintenance award, was an abuse of discretion.

■■ Defendant's first three arguments relate to the maintenance award. The trial court may award maintenance, either permanent or rehabilitative in nature, if the spouse seeking the award: "(1) lacks sufficient income, property, or both . . . to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties." 15 V.S.A. § 752(a). If the court determines that either spouse is entitled to maintenance pursuant to § 752(a), it must then arrive at the amount and the duration of the award considering, among others, the seven factors enumerated in § 752(b). The trial court has considerable discretion in ruling on maintenance, and the party seeking to overturn a maintenance award must show that there is no reasonable basis to support it. *Klein v. Klein*, 150 Vt. 466, 472, 555 A.2d 382, 386 (1988). Because of this broad discretion, our function on appeal is limited to determining "whether its exercise of discretion was proper." *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985).

Much of defendant's argument represents a misunderstanding of the term "reasonable needs" in § 752(a)(1). In *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988), we empha-

sized that the reasonable needs must be determined "in light of the standard of living established during the marriage." See also *Klein*, 150 Vt. at 474, 555 A.2d at 387 (need for spousal support judged not by subsistence but instead in relation to the standard of living established during the marriage). In *Klein*, we also found that maintenance can serve the purpose of recompensing a homemaker for her contribution to the family's well-being where that contribution is not otherwise made in the property distribution. *Id.* More recently, in *Downs v. Downs*, 154 Vt. 161, 166, 574 A.2d 156, 159 (1990), we found that maintenance in appropriate cases "can be a tool to balance equities whenever the financial contributions of one spouse enable the other spouse to enhance his or her future earning capacity."

In this case, the court found that plaintiff had an earning potential of $17,700 as a school teacher in Montpelier. Nevertheless, the court concluded that while "the plaintiff is able to support herself well above the poverty level, . . . she lacks sufficient income to provide for her reasonable needs where reasonable needs are considered in light of the standard of living established during the marriage." Contrary to defendant's assertions, it is clear that the court considered plaintiff's earning capacity and concluded that her income alone would be insufficient to meet her reasonable needs.

The court also considered each of the seven factors enumerated in § 752(b) to establish the amount and duration of the maintenance. It noted that, as the property distribution was not above and beyond an equitable distribution of the assets, the property awarded will provide the parties with a nest egg for retirement or a reserve for emergencies rather than be used in lieu of maintenance. It also focused on the fact that the parties had enjoyed an above-average standard of living during the marriage and that plaintiff was not likely to be able to support herself at that standard. Even after the maintenance award, there is a substantial disparity in income. We find no abuse of discretion and conclude that defendant has failed to show that there is no reasonable basis to support the maintenance award. See *Quesnel v. Quesnel*, 150 Vt. 149, 151–52, 549 A.2d 644, 646 (1938).

■ ■ Defendant also argues that the ten-year duration of the rehabilitative maintenance payments is arbitrary and unsupportable and therefore is an abuse of discretion. The court is required to impose a time limit on rehabilitative maintenance. See *Cleverly v. Cleverly*, 147 Vt. 154, 159, 513 A.2d 612, 615 (1986). In imposing this requirement, we recognize that it may be difficult to predict the exact length of time for plaintiff to become self-supporting. Thus, if the period proves too short or too long, the disadvantaged party can seek modification under 15 V.S.A. § 758. See *id.* at 159–60, 513 A.2d at 615. In this maintenance decision, as in others, we must accord the trial court wide discretion as long as the result leaves the recipient in a position to support herself at the standard set during the marriage. See *Klein*, 150 Vt. at 476, 555 A.2d at 388. Plaintiff was removed from the job market for over ten years in order to be a homemaker. Even if plaintiff had continued to teach during the marriage and had earned a masters degree during that time, the court found that her annual salary would be $29,308. Unless she obtains employment with an increasing salary, her overall income will be eroded by inflation. In light of these considerations, we find no error in the duration of the rehabilitative period.

■ ■ Defendant also contends that the court's failure to terminate the maintenance award upon plaintiff's remarriage was an abuse of discretion. While it is within the court's discretion to terminate maintenance payments upon remarriage, see, e.g., *Jacobs v. Jacobs*, 507 A.2d 596, 601 (Me. 1986), remarriage is not a factor that must be considered under § 752. Remarriage does not necessarily improve the spouse's financial security, and therefore courts have held that remarriage does not automatically justify a termination of maintenance payments. See, e.g., *In re Marriage of Bettiol*, 92 Or. App. 587, 588, 759 P.2d 322, 322 (1988). Further, the paying spouse may seek a modification of the order if remarriage causes an increase in income so that a real and substantial change of circumstances is present. See 15 V.S.A. § 758. We find no abuse of discretion.

■ Defendant's final argument on appeal is that the trial court's equal distribution of the marital estate, in light of its maintenance award, is an abuse of discretion. Essentially, defendant asserts that while plaintiff may be entitled to either maintenance or property, she should not receive a substantial amount of both where, as here, she was at fault for the breakup of the marriage. The property division and maintenance award are closely related under Vermont's statutory scheme, and the court must give due consideration to both. See *DeGrace v. DeGrace*, 147 Vt. 466, 470, 520 A.2d 987, 990 (1986). In appropriate circumstances, it is not an abuse of discretion for the trial court to conclude that significant amounts of both property and maintenance should be awarded.

■ ■ 15 V.S.A. § 751 provides that "the court shall settle the rights of the parties to their property . . . [and] equitably divide and assign the property," and sets out twelve factors that the court may consider in making a property settlement. As with the award of maintenance, a trial court has wide discretion in the disposition of marital property upon divorce, and we will affirm its decision where we find reasonable evidence to support the court's findings and conclusions. See *McCrea*, 150 Vt. at 206, 552 A.2d at 394. Further, we have noted that the distribution of property is not an exact science, and therefore all that is required is that the distribution be equitable. *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988). Here, the court made extensive findings with respect to the relevant factors enumerated in 15 V.S.A. § 751(b) and in its conclusions of law stated that it had considered each of these factors in arriving at an equitable distribution. We realize that the court had to balance numerous factors, including the fault of the plaintiff and the contributions she had made as homemaker to the property and the earnings that were spent on the property. In the end, the court struck a balance that provided each party with approximately 50% of the marital estate. Again, we find no abuse of discretion.

*Affirmed.*