## Christine Fraioli Taylor v. Richard Taylor

[819 A.2d 684]

No. 01-309

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 8, 2002
Motion to Amend Granted January 7, 2003

*James C. Foley, Jr.* of *Deppman & Foley, P.C.*, Middlebury, for Plaintiff-Appellee.

*Marsha Smith Meekins* of *Roesler, Whittlessey, Meekins & Amidon*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant, Richard Taylor, appeals from the family court's decision dismissing his motion to modify spousal maintenance. On appeal, he claims that the trial court erred by: (1) finding that it did not have jurisdiction to modify the parties' maintenance order because the remarriage of plaintiff, Christine Taylor, to a person of significant wealth was not a real, substantial and unanticipated change of circumstances*; and (2) ordering that Richard make no further inquiry into the finances of plaintiff's new spouse and that he return any financial data he had gathered to the new spouse. For the reasons stated below, we reverse and remand for further proceedings.

The material facts are not in dispute. Richard and Christine were married in 1975 after they both graduated from Middlebury College. During the marriage, Richard was an attorney in private practice, and for most of the marriage, Christine ran the household and raised the couple's two children. When the children became older, Christine worked for Middlebury College in an art museum as a museum curator. Shortly before she filed for divorce, she was terminated from this job. The couple owned a home and over two hundred acres of land together and enjoyed a comfortable lifestyle, funded almost exclusively by Richard's law practice and his interest in several family trusts and pieces of real estate. Christine filed for divorce in 1991 after she discovered that Richard had been having an affair with his paralegal.

After contested divorce proceedings, the family court issued a divorce order on September 17, 1992; it included an award of maintenance to Christine of $500 per week, to terminate upon Christine's death, remarriage, or cohabitation with another person. Christine moved to

---

* Richard briefed whether a prenuptial agreement signed by Christine with her new husband prevented her access to her husband's wealth. Christine argued below that the motion to modify should be denied because of the prenuptial agreement, but the family court never reached this argument, and Christine has not raised it here. We do not consider the effect of the prenuptial agreement, preferring that it be addressed in the first instance by the family court.

amend the provision terminating maintenance upon remarriage. The motion argued:

> Christine hopes that a long term positive relationship in marriage or otherwise will be part of her future. Automatic termination of maintenance on remarriage or cohabitation effectively precludes this possibility. While remarriage may result in an acceptable level of financial security for Christine, this change is far from certain. Given the vast inequities in the financial circumstances of the parties after the divorce, the duration of the marriage, and the inequity in property division notwithstanding the fault issue, automatic termination of maintenance with remarriage is not appropriate. Rather, remarriage or cohabitation should be factors to be considered as a change in circumstance in the event either occurs and Richard seeks to modify maintenance. . . .

The court granted the motion on October 29, 1992. In place of the earlier provision, the court placed the following in its final order of December 4, 1992:

> Upon Plaintiff's remarriage or Plaintiff's living with another as if married spousal maintenance shall be reduced by fifty percent of its then current level.

Christine appealed the property and maintenance awards to the Vermont Supreme Court, and we reversed and remanded the case to the family court for further findings of fact and a more equitable property settlement. *Taylor v. Taylor*, No. 93-028 (Vt. Mar. 3, 1994) (unpublished entry order). Because the maintenance and property awards were interrelated, we vacated and remanded the maintenance award as well. *Id.* at 2. We addressed Christine's arguments about the maintenance award to minimize further litigation on the topic. We upheld the maintenance award generally and specifically upheld the provision reducing the maintenance amount by fifty percent should plaintiff remarry as within the family court's discretion under *Coor v. Coor*, 155 Vt. 32, 35, 580 A.2d 500, 502 (1990). *Taylor*, slip op. at 3.

After remand, Richard filed a motion to terminate or modify maintenance, which Christine opposed. A hearing was held on July 7, 1994, where the parties stipulated to the terms of a new final order and decree in order to resolve all pending motions. On July 26, 1994, the family court filed its second amended final order and decree, which provided:

[Richard] shall pay to [Christine] the initial sum of $500 per week as maintenance which shall continue until the death of either party. Upon [Christine's] remarriage or [Christine's] living with another as if married spousal maintenance shall be reduced by fifty percent of its then current level. Spousal maintenance shall be adjusted on April, 1993, and annually thereafter to be increased or decreased by a percentage change for the previous year in the ... Consumer Price Index ....

On August 6, 1999, Richard filed another motion to terminate or modify maintenance, mainly alleging that Christine had remarried a "person of significant wealth" and as a result Christine no longer required Richard's maintenance to live at the standard of living established during the marriage. The court first dismissed the motion because it found that no real, substantial and unanticipated change of circumstances existed in light of the provision on remarriage. See 15 V.S.A. § 758 (finding of real, substantial and unanticipated change of circumstances is jurisdictional requirement to modify maintenance order). On Richard's timely motion to reconsider, the court reversed itself and allowed discovery to go forward on plaintiff's current income and wealth. The parties battled over discovery for nearly a year, after which Christine filed a renewed motion to dismiss.

The court reversed itself again and dismissed Richard's motion to modify, finding that Richard failed to show that there was a real, substantial and unanticipated change of circumstances, as required for modification under 15 V.S.A. § 758. The court reasoned that Christine's remarriage could not be considered an unanticipated change of circumstances because the parties and the family court had already anticipated her remarriage by making specific provision for it, without regard to the income or wealth of her new husband. It also noted that the only change in financial circumstances the provision recognized was the change in the cost of living. The court likened the maintenance provision to a liquidated damages clause. Because it dismissed the motion, it prohibited further discovery into the financial affairs of Christine's new husband and ordered that all such information in Richard's possession be returned.

The main issue in this case is whether the family court had jurisdiction over the motion to modify in light of the maintenance provision. In a nutshell, Richard's argument is that this case is primarily about Christine's newly-acquired income and wealth, and their effect on her need for maintenance, and only secondarily about her remarriage. He claims that it was never anticipated that she would marry a person of such

wealth. Christine counters that this case is primarily about her remarriage, because that is the source of any new income and wealth, and the parties agreed what the effect of her remarriage would be. She argues that since the parties specifically provided for the effect of her remarriage, it was anticipated.

While the parties disagree on how we should view the maintenance provision in the divorce order, they do agree Christine had no specific remarriage plans at the time of the divorce decree, and certainly no plans to marry her current husband. Indeed, there is no indication that she and her current husband had even met when the divorce order was issued.

The basic underlying law governing the question before us is settled. Before the court can modify a maintenance order, it must find that there has been a real, substantial and unanticipated change of circumstances; if the required change has not occurred the court has no jurisdiction to modify the order. See *id.*; *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989). The court can modify the maintenance award whether or not it "is based upon a stipulation or an agreement." 15 V.S.A. § 758; *Bullard v. Bullard*, 144 Vt. 627, 629 n.*, 481 A.2d 1049, 1051 n.* (1984) (after 1982 amendment to § 758, the same standard governs a motion to modify maintenance whether or not a stipulation is involved). The threshold determination of changed circumstances is discretionary. See *deBeaumont v. Goodrich*, 162 Vt. 91, 98, 644 A.2d 843, 847 (1994). "There are no fixed standards for determining what meets this threshold, and . . . evaluation of whether or not any given change is substantial must be determined in the context of the surrounding circumstances." *Pigeon v. Pigeon*, 173 Vt. 464, 466, 782 A.2d 1236, 1238 (2001) (mem.) (internal punctuation and citation omitted). Normally, we will not disturb the trial court's discretionary determination unless the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence. *deBeaumont*, 162 Vt. at 98, 644 A.2d at 847. In this case, however, we are confronted with a nondiscretionary question of law because the trial judge ruled that he had no discretion to grant defendant's motion.

The purpose of spousal maintenance is to allow spouses receiving support to meet their "reasonable needs." 15 V.S.A. § 752(a)(1). Those needs are determined based upon the standard of living established during the marriage. *Id.* § 752(a)(2). 15 V.S.A. § 752(b) directs the family court to consider a number of nonexclusive factors in making its award, including the financial resources of the parties, the receiving party's ability to meet needs independently, the standard of living established during the marriage, the duration of the marriage, the emotional condition

of each spouse, and the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while also meeting those of the other spouse. In addition, a maintenance award may reflect an intent to " 'recompense for the contribution of a homemaker to the family's well-being which was not otherwise made (presumably in the property division).' " *Klein v. Klein*, 150 Vt. 466, 474, 555 A.2d 382, 387 (1988) (quoting Krauskopf, *Maintenance: A Decade of Development*, 50 Mo. L. Rev. 259, 260 (1985)). Once a party receiving support remarries, the new spouse also owes the party a reciprocal duty of "suitable support." 15 V.S.A. § 291(a).

Many states have adopted specific rules governing the effect of remarriage on preexisting maintenance awards. Up until about thirty years ago, even in cases where the divorce order did not stipulate that maintenance payments terminate upon the recipient's remarriage, it was considered contrary to public policy to allow a person to be concurrently supported by both a current spouse and a former spouse. See, e.g., *Myers v. Myers*, 195 N.W.2d 113, 115 (Iowa 1972) (Rawlings, J., dissenting); *Wolter v. Wolter*, 158 N.W.2d 616, 619 (Neb. 1968). Under this policy, a maintenance award is automatically terminated if the recipient spouse remarries.

The contemporary approach in most states still disfavors concurrent support, but does not require automatic termination of a maintenance award on remarriage of the recipient spouse. Instead, most courts hold that remarriage establishes a prima facie case for termination or reduction of the ordered maintenance payments. See, e.g., *Keller v. O'Brien*, 652 N.E.2d 589, 593 (Mass. 1995); *Marquardt v. Marquardt*, 396 N.W.2d 753, 754 (S.D. 1986). In these jurisdictions, the receiving spouse may continue to receive maintenance only in an extraordinary circumstance. See, e.g., *In re Marriage of Gillilland*, 487 N.W.2d 363, 366 (Iowa Ct. App. 1992) (extraordinary circumstance found where standard of living provided by new spouse with annual income of $30,000 would not meet standard of living during previous marriage to husband who earned $220,000 annually); *In re Marriage of Orgren*, 375 N.W.2d 710, 712-13 (Iowa Ct. App. 1985) (extraordinary circumstance found where recipient wife cohabited with a man who earned $5,900 annually and did not contribute any financial support to wife); *Bauer v. Bauer*, 356 N.W.2d 897, 898-99 (N.D. 1984) (extraordinary circumstance found where payor spouse and recipient spouse had large disparity in education and payor spouse's unfulfilled agreement to pay for recipient spouse's education was incorporated in original decree).

This Court has not, however, followed the majority of jurisdictions in this area. Our law is stated in *Johnson v. Johnson,* 155 Vt. 36, 42, 580 A.2d 503, 507 (1990):

> While it is within the court's discretion to terminate the maintenance award upon remarriage . . . , remarriage is not a factor that must be considered under § 752. Remarriage does not necessarily improve the spouse's financial security, and therefore courts have held that remarriage does not automatically justify a termination of maintenance payments. . . . Further, the paying. spouse may seek a modification of the order if remarriage causes an increase in income so that a real and substantial change of circumstances is present.

(citations omitted); see also *Coor v. Coor,* 155 Vt. at 35, 580 A.2d at 502 (family court had discretion to include in divorce decree a provision that maintenance would terminate on remarriage; if "anticipated increased financial security does not materialize, [spouse] may seek an amendment of the order terminating maintenance upon remarriage").

■The central point of *Johnson* and *Coor* is that we have viewed remarriage as relevant to an ongoing maintenance obligation only to the extent it bears on the "financial security" of the recipient spouse. This point is consistent with our precedents under § 758 that substantial and unanticipated changes in the nonmaintenance income available to the recipient spouse, or to the income available to the obligor spouse, can be a change in circumstances to warrant modification of a maintenance award. See *Stickney v. Stickney,* 170 Vt. 547, 548, 742 A.2d 1228, 1230 (1999) (mem.) (lack of expected income increases of obligor spouse, as well as increased income available to recipient spouse, supported modification of maintenance order); *Lowery v. Lowery,* 156 Vt. 268, 273-74, 591 A.2d 81, 84 (1991) (reduction of income of obligor spouse can constitute changed circumstances to allow modification of maintenance award); *Sylvia v. Sylvia,* 146 Vt. 596, 597-98, 508 A.2d 708, 709 (1986) (175% increase in income of obligor spouse, and loss of employment because of illness of recipient spouse, constitute a change in circumstances to allow modification of the maintenance award under § 758); *Bullard,* 144 Vt. at 629, 481 A.2d at 1051 (in determining whether grounds for modification of maintenance award exist, court may consider improved financial circumstances of recipient spouse).

■ Under *Coor* the recipient spouse can make a motion to modify a remarriage provision in a maintenance order if the remarriage produces substantially less financial security than necessary to replace all or part of the maintenance award. Under *Johnson,* the obligor spouse can bring a motion to modify if, in the absence of a remarriage provision in a maintenance order, a remarriage substantially reduces the need for maintenance. We see no reason for a different rule here. Richard alleges that Christine now has access to such income and wealth that she no longer needs maintenance. Her improved financial security is grounds for the motion to modify the maintenance award.

■ In reaching this conclusion, we cannot accept the family court's ruling that the maintenance provision, reducing maintenance to 50% on remarriage, should be treated like a liquidated damages clause that prevents looking at the financial circumstances of the parties at any time after the provision is adopted. Because maintenance provisions are forward looking, they necessarily involve some predictions of the future circumstances of the parties. The maintenance award should be tailored to this prediction of future circumstances. This does not mean, however, that the award that results from the prediction is immutable. Indeed, under the family court's theory, no maintenance award could be modified, at least if it contained a provision that directed a change in the maintenance amount based on a future event.

Nor does it make a difference that the maintenance award is based, at least technically, on an agreement of the parties. Section 758 allows modification of stipulated maintenance awards under the same circumstances as court-imposed awards without an underlying agreement of the parties.

This is not a holding that the parties cannot in appropriate circumstances include in an agreement what events will or will not be considered a real, substantial and unanticipated change of circumstances for purposes of a motion to modify a maintenance award. Indeed, we have recognized the validity of such a provision in a child custody provision. See *deBeaumont,* 162 Vt. at 96, 644 A.2d at 846. In this case, there is no indication from its wording that the maintenance provision defined changed circumstances in relation to Christine's remarriage.

We are also not holding that the motion to modify must be granted. Although the motion to modify has been pending for a considerable period of time, no evidence has yet been taken. Further, even if Richard is entitled to some relief, he is not necessarily entitled to the termination of his maintenance obligation. We emphasize as we did in *Stickney v. Stickney* that maintenance serves multiple purposes including "to

compensate the homemaker for contributions to family well-being not otherwise recognized in the property distribution." 170 Vt. at 549, 742 A.2d at 1231. The parties disagree whether part of the maintenance award in this case was intended to be compensatory. If the family court finds a real, substantial and unanticipated change of circumstances, it will have to resolve this disagreement in deciding how much, if any, to reduce the maintenance award.

In light of our disposition of the first issue, the disposition of the next issue necessarily follows. The family court prohibited further discovery, and ordered the return of discovery materials Richard had already received, because it decided to dismiss the modification motion. As we have reversed the dismissal of the motion, we also strike these discovery orders.

*Reversed and remanded for proceedings not inconsistent with this opinion.*