2005 VT 122

## Julie Miller v. Lee Miller
## Patricia A. Smaller v. Mark S. Smaller
## Janet (Weaver) Loubengeiger v. Todd B. Weaver

[892 A.2d 175]

Nos. 04-232, 04-187 & 04-402

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed November 4, 2005

*Melvin Fink* of *Melvin Fink, P.C.*, Ludlow, for Plaintiff-Appellant Julie Miller (04-232) and Plaintiff-Appellant Patricia Smaller. (04-187)

*Janet Loubengeiger*, Pro Se, Essex Junction, Plaintiff-Appellee. (04-402)

*Robert I. Morgan*, Claremont, New Hampshire, for Defendant-Appellee Lee Miller. (04-232)

*Patrick M. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Defendant-Appellee Mark Smaller. (04-187)

*Todd B. Weaver*, Pro Se, Hinesburg, Defendant-Appellant. (04-402)

¶ 1. **Dooley, J.** Patricia Smaller, Julie Miller, and Todd Weaver filed separate appeals of family court decisions regarding modification of spousal maintenance. Patricia Smaller and Julie Miller appeal orders reducing their spousal maintenance awards based on findings that

their financial circumstances had experienced real, substantial, and unanticipated changes. Todd Weaver appeals a decision denying his motion to modify spousal maintenance because the family court found no changed circumstances. We consolidated the appeals for decision because they involve a similar question of law — when does cohabitation or remarriage constitute a real, substantial, and unanticipated change of circumstances under 15 V.S.A. § 758. In *Miller v. Miller*, we conclude that the family court was within its discretion in deciding that recipient spouse's new husband's contributions to the household expenses constituted a change in circumstances, and thus affirm the court's decision to eliminate husband's spousal maintenance obligation. In *Smaller v. Smaller*, we reverse the family court's decision to eliminate husband's spousal maintenance obligation because the court's findings show that the recipient spouse's financial circumstances were not substantially improved by actual support from a cohabitant. In *Loubengeiger v. Weaver*, we affirm the family court's decision to deny the obligor spouse's motion to modify maintenance because the motion, and supporting affidavit, do not demonstrate that any improvement in the recipient's financial circumstances from support by her cohabitant was unanticipated.

## I. The Facts

### A. *Miller v. Miller*

¶ 2. Julie and Lee Miller were divorced in December 2001, after eleven years of marriage. The divorce decree required husband to pay spousal maintenance of $975 per month until June 2007, and $750 per month from July 2007 until June 2009. It also obligated wife to pay a significant amount of debt, including approximately $100,000 in principal on two home mortgages and $22,126 in various unsecured debts. At the time of the divorce, wife's monthly housing expenses, without food costs, were $1551. At that time wife was also supporting four minor children — two children of the parties and two from a former marriage.

¶ 3. Following the divorce, wife filed for bankruptcy and discharged all of her unsecured debt except for one loan on which she pays $200 per month. She remarried, in August 2002, to Shane Taylor, a self-employed logger, and moved into his home. Soon thereafter, the bank foreclosed on the home she was awarded in the divorce decree because of her failure to make mortgage payments.

¶ 4. Husband moved to modify the spousal maintenance order in November 2002 because of wife's improved financial circumstances.

Although wife's work income of $20,000 per year had not appreciably increased, he alleged three other improvements: financial support from wife's new husband, reduced expenditures because of the bankruptcy and the foreclosure, emancipation of one child of wife's first marriage, and reduced living expenses of the other. After hearing, the family court found a real, substantial, and unanticipated improvement in wife's financial circumstances, and eliminated husband's spousal maintenance obligation.

¶ 5. At the hearing, wife testified that her financial agreement with Mr. Taylor is to evenly split the household bills, including mortgage, property taxes, utilities, heat, home maintenance, and food. She stated that Mr. Taylor earns around $500 per week and is expected to contribute $1000 per month to the household expenses, but is not always able to provide that amount due to other personal debts. She confirmed that when Mr. Taylor makes his full contribution, she pays $839 per month for all housing expenses, except food.

¶ 6. Wife also testified that she had incurred substantial new debt since declaring bankruptcy and remarrying. At the time of the divorce, she paid $212 per month for a 1994 Pontiac Transport valued at $12,000. After the divorce, however, she purchased a new $40,000 automobile on credit and owned it approximately two years before it was repossessed. She then purchased a 2003 GMC Envoy for $23,000, incurring a monthly car payment of $571 per month. Additionally, she took out a $5000 personal loan for car and house repairs, and owed roughly $1500 in new credit card debt.

¶ 7. Finally, wife testified that circumstances had changed with respect to the children of her first marriage. One had graduated from high school and was working, but was still living with her without contributing to household expenses. The other was in college in Florida on a full scholarship that covered all living expenses.

¶ 8. Based on the evidence presented, the family court concluded that wife's remarriage constituted a real, substantial, and unanticipated change in circumstances. The court found that Mr. Taylor's income was sufficient to contribute approximately $1000 per month to the household. It also found that wife's financial circumstances and lifestyle had substantially improved since the time of her divorce as a result of her clearing her debts through the bankruptcy and foreclosure. While she argued that her current debt load was approximately the same as at the time of her divorce, the court determined it was primarily her own fault as a result of her decisions to purchase a more expensive vehicle and make improvements to her home on credit.

## B. *Smaller v. Smaller*

¶ 9. In October 2002, the Windsor Family Court granted Patricia and Mark Smaller a divorce, and ordered husband to pay wife $1200 per month as spousal maintenance until such time as either died. In November 2002, wife moved out of the marital home and into an apartment of her own. In April 2003, her new partner moved into her apartment, but they have not married and the new partner has not paid rent or substantially contributed to household expenses. In January 2004, husband filed a motion to modify maintenance, claiming a change of circumstances because: (1) subsequent to the original maintenance order his wife began cohabitating with another person who contributes to her support; and (2) wife received a promotion which resulted in a greater income. After hearing, the family court found that wife was cohabitating with a new partner, but the new partner did not, in fact, contribute to rent or other household expenses. The court determined, however, that wife's cohabitation with a person who works full-time and could contribute to the household expenses constituted a real, substantial, and unanticipated change of circumstances. The court reasoned that husband should not have to pay to maintain his former wife's home and lifestyle when she chose not to accept money from a cohabitant who was capable of contributing to household expenses. It also found that wife's income had increased since the time of the divorce but concluded that the increase was not sufficient, alone, to constitute a substantial change of circumstances. The family court modified the maintenance order, reducing husband's monthly spousal maintenance payment by $350, based on the amount in rent and utility expenses wife's new partner should be expected to contribute as a fully-employed cohabitant. Wife subsequently filed this appeal.

## C. *Loubengeiger v. Weaver*

¶ 10. Janet Loubengeiger and Todd Weaver separated in September 1999 and divorced in August 2000 as a result of husband's extra-marital relationship. During their eight-year marriage, they had one child. At the time of the divorce, husband was employed by IBM and earned a salary of approximately $100,000. Wife was a full-time mother and was not employed outside the home.

¶ 11. The parties negotiated a spousal maintenance stipulation, which the Addison Family Court accepted in January 2002. The stipulation required husband to pay wife maintenance of $1400 per month for sixty consecutive months and to transfer to her $115,000

from his pension and retirement accounts. The stipulation stated that it would not be modified "without the necessary change of circumstances required under Vermont law" and that separation by either party from his or her current partner could not be asserted as grounds for a modification of spousal maintenance. Apparently, the latter provision was added because both husband and wife were in committed relationships with new partners, who were named in the stipulation.

¶ 12. In July 2004, husband filed a motion to modify spousal maintenance arguing that the maintenance amount agreed upon in the stipulation anticipated that former wife would have to pay for her own housing and that she would make efforts to gain employment and training. He claimed that a change of circumstances had occurred because she remained living with her new partner, made no efforts to gain employment or training, enjoyed a higher standard of living than that established during the marriage, and received twenty percent more than the $68,500 the maintenance order anticipated she would obtain from his pension distribution after taxes and fees. The family court denied this motion, holding that the stipulation did not make payment of spousal maintenance contingent on former wife seeking employment or training and that no basis existed for a finding that a substantial and unanticipated change of circumstances had occurred.

¶ 13. In August 2004, former husband filed a motion for reconsideration, reiterating the arguments from his initial motion. The family court denied the motion without explanation, and husband appealed.

## II. The Law

¶ 14. Family courts may order spousal maintenance upon a finding that the spouse seeking maintenance "lacks sufficient income, property, or both ... to provide for his or her reasonable needs." 15 V.S.A. § 752(a)(1). These needs are based on the "standard of living established during the marriage," *id.* § 752(a)(2), and may additionally include compensation for the "contribution of a homemaker to the family's well-being." *Taylor v. Taylor,* 175 Vt. 32, 37, 819 A.2d 684, 688 (2002) (quotations omitted).

¶ 15. Upon a motion by either party, the court may modify a spousal maintenance order if it finds a "real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758. The burden of proving this change of circumstances lies with the party seeking modification. *Mayo v. Mayo,* 173 Vt. 459, 462, 786 A.2d 401, 405 (2001) (mem.). "There are no fixed standards for determining what meets this threshold, and ... evaluation of whether or not any given change is

substantial must be determined in the context of the surrounding circumstances." *Taylor*, 175 Vt. at 36, 819 A.2d at 688 (quotations omitted). We will not reverse the family court's ruling on maintenance unless its discretion "was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." *Id.*

¶ 16. We have combined these cases for decision because each involves a situation whereby an obligor spouse alleges a recipient spouse's post-divorce relationship as grounds for a maintenance award modification. We have addressed this situation where the recipient spouse has remarried, holding that "[r]emarriage does not necessarily improve the spouse's financial security," and therefore it "does not automatically justify a termination of maintenance payments." *Johnson v. Johnson*, 155 Vt. 36, 42, 580 A.2d 503, 507 (1990); accord *Coor v. Coor*, 155 Vt. 32, 35, 580 A.2d 500, 502 (1990). We amplified this holding in *Taylor*, explaining that the point of *Johnson* and *Coor* is that we view "remarriage as relevant to an ongoing maintenance obligation only to the extent it bears on the 'financial security' of the recipient spouse." *Taylor*, 175 Vt. at 38, 819 A.2d at 689. We characterized this rule as consistent with our holdings that substantial, unanticipated "changes in the nonmaintenance income available to the recipient spouse" could warrant a modification of a maintenance award. *Id.*; see also *Bullard v. Bullard*, 144 Vt. 627, 629, 481 A.2d 1049, 1051 (1984) ("[S]ince an original maintenance decree issued in Vermont takes into consideration the financial capabilities and prospects of both spouses, it is only reasonable and fair that in considering a modification of that original order, a court examine the evidence relating to the change in financial circumstances of either or both spouses."). We acknowledged that we have not followed the majority of jurisdictions on this point — they presume that maintenance will be reduced or terminated on remarriage of the recipient spouse. *Taylor*, 175 Vt. at 37, 819 A.2d at 689. Under *Taylor*, the obligor spouse may seek a modification of the order if remarriage causes an increase in the recipient spouse's income that "substantially reduces the need for maintenance." *Id.* at 39, 819 A.2d at 690.

¶ 17. We have not addressed the effect on a maintenance award of a post-divorce relationship of the recipient spouse where the spouse cohabits with another partner but does not remarry. Our cases concerning cohabitation have been limited to consideration of the applicability of remarriage clauses in divorce stipulations. *Porter v. Porter*, 137 Vt. 375, 376, 406 A.2d 398, 399 (1979); *Stahl v. Stahl*, 136 Vt.

90, 91, 385 A.2d 1091, 1092 (1978). We have held that cohabitation does not equal remarriage for purpose of such clauses. *Porter*, 137 Vt. at 376, 406 A.2d at 399. These cases are otherwise unhelpful because they arose before the amendment to 15 V.S.A. § 758 that allows modification of maintenance awards "based upon a stipulation or an agreement" for the same grounds as for maintenance awards not based on such agreements. 1981, No. 247 (Adj. Sess.), § 13; see also *Cliche v. Cliche*, 143 Vt. 301, 303 n.*, 466 A.2d 314, 314 n.* (1983) (explaining that after the amendment, maintenance awards based on a stipulation can be modified "upon a showing only of changed circumstances"). Thus, to the extent the obligor in those cases argued that modification should occur based on cohabitation, he had to show the grounds for modifying a contract, a much greater burden than changed circumstances. *Porter*, 137 Vt. at 377, 406 A.2d at 400.

■ ¶ 18. The majority rule in jurisdictions without a specific statute is that cohabitation by the recipient spouse can result in reduction or elimination of a maintenance award only if it improves the financial circumstances of the recipient spouse enough to substantially reduce the need for maintenance. *Smith v. Mangum*, 747 P.2d 609, 611 (Ariz. Ct. App. 1987) (stating majority rule that "courts modify the amount of spousal maintenance received by the cohabiting ex-spouse only if the spouse's support needs have changed"); accord *Lombardo v. Lombardo*, 992 S.W.2d 919, 922-23 (Mo. Ct. App. 1999); *Gilman v. Gilman*, 956 P.2d 761, 764 (Nev. 1998); *Gayet v. Gayet*, 456 A.2d 102, 104 (N.J. 1983); see generally 2 H. Clark, The Law of Domestic Relations in the United States § 17.6(5), at 285-90 (1987). This majority rule is essentially the rule we have adopted for remarriage as explained in *Taylor*. Thus, it is entirely consistent with our current law and creates no disincentive to remarriage, a concern in states where remarriage results automatically in the termination of maintenance. We adopt the majority rule for cohabitation situations.

¶ 19. In doing so, we particularly note the cautionary words of the North Dakota Supreme Court in *Cermak v. Cermak*, 1997 ND 187, ¶ 10, 569 N.W.2d 280:

> The length of [the recipient spouse's] relationship is unknown; it may last until her death, or may sour tomorrow. On this record, any support [she] may receive from her cohabitant is provided from his benevolence and comes with no reciprocal or continuing obligation.

See also *Gilman*, 956 P.2d at 765 (recognizing that "cohabitants owe no legal or financial support to one another"). As the Kentucky Supreme Court explained, we do not intend "to open the floodgates to motions to terminate or suspend maintenance payments in every situation in which the maintenance recipient has begun dating, or has formed casual relationships with persons of the opposite sex." *Combs v. Combs*, 787 S.W.2d 260, 262 (Ky. 1990). Cohabitation has become sufficiently common that it could be claimed in many instances where there is a divorce maintenance award. It can, of course, also affect the economic capacity of the obligor spouse. To constitute changed circumstances, cohabitation must approach the permanency of marriage. Thus, any claim of changed circumstances must include "some permanency or long-term relationship." *Id.*

¶ 20. We also caution that changed circumstances presuppose a substantial improvement in the financial circumstances of the recipient spouse as a result of some measure of support by the cohabitant. See *Van Dyke v. Steinle*, 902 P.2d 1372, 1385 (Ariz. Ct. App. 1995) (remanding on question of reduction of spousal maintenance where wife's cohabitation raised issue of fact regarding "whether husband has established a substantial and continuing change of wife's economic circumstances"). We recognize that sharing of household expenses may produce some measure of financial improvement because some of those expenses are not directly proportional to the number of household occupants. This improvement cannot alone be changed circumstances unless we are prepared to hold that a former spouse who takes a roommate to reduce expenses will lose the savings because of an offsetting reduction in maintenance. Maintenance recipients should normally retain the benefit of actions they take to live more economically.

¶ 21. Finally, we caution that any economic benefit from cohabitation must be "unanticipated" to justify a reduction of maintenance. See *Haag v. Haag*, 609 A.2d 1164, 1165 (Me. 1992) (finding that trial court abused discretion in eliminating husband's obligation to pay alimony in part because the possibility of wife's cohabitation was "not unanticipated by the original decree"); *Cermak*, 1997 ND 187, ¶ 18 ("A change of circumstances must be unforeseen at the time of the original divorce decree."). This is the holding of *Gil v. Gil*, in which the obligor spouse argued that the recipient spouse's maintenance should be terminated because she was in a "long-term cohabitation relationship" which involved sharing of expenses. 151 Vt. 598, 599, 563 A.2d 624, 625

(1989). We affirmed the trial court's refusal to find changed circumstances because the cohabitation relationship was in existence at the time of the divorce order, and it was not unanticipated that the cohabitants would share expenses. *Id.* at 600, 563 A.2d at 626.

## III. Applying the Law

### A. *Miller v. Miller*

¶ 22. In this case, wife appeals the Windsor Family Court's decision to eliminate husband's spousal maintenance obligation and to reimburse husband for spousal maintenance paid since January 1, 2004, arguing that the court could not find the real, substantial, and unanticipated change of circumstances required by 15 V.S.A. § 758. She claims that, despite her remarriage, her financial situation is no better than it was at the time of her divorce.

¶ 23. At the outset we note that this case only partially depends upon the recipient spouse's remarriage as the basis for the finding of the requisite changed circumstances. The recipient spouse improved her financial circumstances through bankruptcy and the elimination of a large housing debt when the mortgage on the home awarded in the divorce was foreclosed and the bank took title to the home. Further, the recipient spouse was no longer required to provide substantial support to the children of her first marriage, although she voluntarily chose to provide such support with respect to one of the children.

¶ 24. We need not decide whether these facts alone were sufficient to find changed circumstances because we agree with the family court that the remarriage could also be considered in this case under *Taylor*. As that case states, remarriage is relevant to a showing of changed circumstances "only to the extent it bears on the 'financial security' of the recipient spouse." *Taylor*, 175 Vt. at 38, 819 A.2d at 689 (explaining *Johnson* and *Coor*). The spouse seeking modification must show that the "remarriage causes an increase in income so that a real and substantial change of circumstances is present." *Johnson*, 155 Vt. at 42, 580 A.2d at 507.

¶ 25. Here, the recipient spouse testified that she had a financial agreement with her new husband whereby he paid half of the household bills. She testified that he earned $500 per week, an amount she also stated on her financial affidavit, and that he contributed approximately $1000 per month to their household expenses. She testified that he could not always pay his full share due to other personal debts, but admitted she knew very little about his financial situation. Based on

this testimony, the family court found that the new husband made actual contributions to the household expenses at "around $1000 per month" and that his salary gave him the financial capacity to continue contributing at that level. As we state above, expense sharing alone is generally not sufficient to show an improvement in financial circumstances, but here the recipient spouse became half-owner of her new husband's house and, as a result, had a much lower housing cost than at the time of the divorce. Based on these circumstances, the family court concluded that wife had experienced a real, substantial, and unanticipated change of circumstances and terminated the maintenance obligation.

¶ 26. Despite the financial support of her new husband, and the other financial improvements found by the family court, wife argues that no real, substantial, and unanticipated change of circumstances has occurred because her financial straits are just as dire as they were at the time of her divorce. The family court disagreed, concluding that the circumstances that led to her dire financial state at the time of the divorce had been alleviated, but that she had assumed new debt thereafter. The court particularly cited: her decision to buy a new car for $40,000 and, after it was repossessed, to buy another new car for $23,000; her assumption of new debt for house and car repairs; and her decision to continue supporting her emancipated daughter from her first marriage despite no obligation to do so. This conclusion is based on the findings, which are supported by the evidence. We, therefore, find no abuse of discretion and affirm the family court's decision. See *Taylor*, 175 Vt. at 36, 819 A.2d at 688 (articulating that family court decisions to modify spousal maintenance should be affirmed unless the court erroneously exercises its discretion, or exercises it "upon unfounded considerations or to an extent clearly unreasonable in light of the evidence").

¶ 27. In affirming the family court decision, we stress what is not covered by this opinion. Wife, recipient spouse, appealed only the decision to find changed circumstances and not the modification decision reached by the family court once it found changed circumstances. Thus, we have not reviewed the amount of the reduction with respect to the improvement of wife's financial situation. Nor have we determined whether part of the original maintenance award in this case was compensatory. If it was, we would question the family court's authority to terminate that part of the maintenance award. See *id.* at 39-40, 819 A.2d at 690 (recognizing that family court cannot eliminate

compensatory part of maintenance award); *Stickney v. Stickney*, 170 Vt. 547, 549, 742 A.2d 1228, 1231 (1999) (mem.) (same).

## B. *Smaller v. Smaller*

¶ 28. Recipient spouse argues that the family court erred by finding a real, substantial, and unanticipated change of circumstances based on her cohabitation with a new partner without finding that her economic situation had actually improved. Thus, she argues that the court relied on its finding that the new partner had the ability to contribute to household expenses, even though he did not so contribute. We agree with recipient spouse's characterization of the family court's decision. The court found credible recipient spouse's testimony that, except for a minimal amount in groceries, she and her partner did not share household expenses. It concluded, however, that husband's maintenance obligation should be reduced because wife chose to have her partner live with her rent-free.

¶ 29. Under the general principles set out above, we agree with the recipient spouse that her financial situation has not improved as a result of the cohabitant relationship. If there was any effect on her financial situation, it was negative.

¶ 30. In essence, the court held that the obligor spouse should have the benefit of expense sharing, as if it occurred, because the new partner had the financial capacity to share in expenses and should be made to do so. We understand the sense of injustice that results from an appearance that an obligor is supporting both his former wife and her new partner. Nevertheless, we cannot hold that this sense of injustice alone supports a finding of changed circumstances. See *Van Dyke*, 902 P.2d at 1382 (noting that failure of cohabitant to contribute to household expenses does not reduce recipient spouse's financial need);* *Mitchell v. Mitchell*, 418 A.2d 1140, 1143 (Me. 1980) (same). Contrary to the reasoning of the dissent, we adopted a rule in *Taylor*, *Johnson*, and *Coor* that allows modification, even on remarriage of the recipient spouse, only upon a showing of actual improvement of the financial circumstances of the recipient spouse. Imputation of income

---

* The dissent cites *Van Dyke* as supporting its position in favor of imputing the cohabitant's income to the recipient spouse. *Post*, ¶ 46. Rather, the only contribution of the cohabitant cited by the *Van Dyke* court was "house maintenance and repairs," which the recipient spouse acknowledged saved a lot of money. 902 P.2d at 1384. Accordingly, *Van Dyke* does not support the dissent's position.

from one cohabitant to another — the rule the dissent seeks and the effect of the trial court decision in this case — is totally inconsistent with the *Taylor* rule because it corresponds to no actual improvement in financial circumstances. Moreover, even if the new partner contributed equally to the expenses of the household, we would not hold, as we explained above, that this alone is a substantial improvement in the recipient spouse's financial circumstances so as to warrant a modification of maintenance. Thus, even if we imputed contribution, as the family court has done here, changed circumstances would still not result. We hold that the family court abused its discretion in modifying the maintenance award based on the amount it decided that wife's new partner should contribute to her household expenses.

### C. *Loubengeiger v. Weaver*

¶ 31. Obligor spouse claims that the family court abused its discretion in denying without hearing his motion to modify spousal maintenance, and raises four points in his argument to this Court. First, he states that the spousal maintenance stipulation was based on the expectation that wife would terminate her relationship with her new partner and find her own housing. Because wife continues to live with the same partner, and is being supported partially by him, husband argues that this represents a change of circumstances requiring a reduction of his maintenance obligation. Second, he claims that the maintenance payments are rehabilitative and were intended to assist his wife while she gained the skills, training, and employment necessary to become self-sufficient. He argues that a change of circumstances has occurred because she has not attempted to gain skills and does not work as was anticipated at the time of the stipulation. Third, he claims that the family court improperly denied his motion to modify because the maintenance agreement was in the form of a stipulation rather than a court order. Finally, he claims that the court erred in dividing his pension and Tax Deferred Savings Plan (TDSP), which resulted in his former wife receiving $80,000 after taxes and fees rather than the intended $68,500. In light of the alleged error, he argues that a reconsideration of his maintenance obligation is required.

¶ 32. We start with the arguments that are not directly related to the recipient spouse's cohabitation with a new partner. Obligor spouse's main argument is that the maintenance obligation should be reduced because wife is not seeking employment or training, as was expected at the time the maintenance stipulation was signed. The maintenance awarded is time-limited and, thus, rehabilitative. See

*Klein v. Klein*, 150 Vt. 466, 476, 555 A.2d 382, 388 (1988) (explaining that rehabilitative maintenance is "temporary maintenance in order that the spouse can acquire the skills and experience to become self-supporting"). The purpose of rehabilitative maintenance is to give the recipient spouse the opportunity to develop or redevelop employment skills that will allow her or him to achieve economic self-sufficiency in the future. *Strauss v. Strauss*, 160 Vt. 335, 339, 628 A.2d 552, 554 (1993); *Klein*, 150 Vt. at 476, 555 A.2d at 388. The time limit creates an economic incentive to maximize income production as soon as possible, with the understanding that the obligor's maintenance obligation will normally end at a time certain, irrespective of the recipient's need.

■ ¶ 33. The family court denied the motion to modify, without hearing, because nothing in the stipulation underlying the order, or the order itself, made the maintenance obligation contingent on the recipient seeking employment or training. We would add that obligor's argument is basically inconsistent with the nature of rehabilitative maintenance. If, for example, the recipient spouse entered training, or began a career at lower wages, nothing in the order suggests that these acts would affect obligor's payment obligation. Indeed, it is central to obligor's argument that these acts were anticipated. Thus, we do not understand how wife's failure to take these steps should affect that obligation. Whether or not she takes steps to improve her employability and income potential, the rehabilitative maintenance obligation will end in five years. *Strauss*, 160 Vt. at 341, 628 A.2d at 555 (noting that rehabilitative maintenance allows parties to get on with their independent lives after the time period expires). Husband reveals the weakness of his argument by expressing it in terms of his expectations that wife would work. "What must be shown is an actual change in circumstances, not a failure to change according to the defendant's alleged expectations." *DeKoeyer v. DeKoeyer*, 146 Vt. 493, 495, 507 A.2d 962, 963 (1986). We find nothing erroneous about the court's exercise of discretion.

¶ 34. Next, husband claims that the court denied his motion because he had entered into a stipulation. He argues that the court's action is inconsistent with 15 V.S.A. § 758, which allows modification of a maintenance order even if it is based on a stipulation. Although the court referred to the stipulation underlying the maintenance order, its point is that the order did not condition the maintenance obligation on the recipient spouse finding employment. Thus, it held that "there is no basis for the court to find that there has been a *substantial and unanticipated change of circumstances*." (Emphasis added.) The

holding rested on the relevant legal standard, not on the fact that the maintenance order was based upon a stipulation.

¶ 35. The obligor's third argument is that wife realized $80,000 after taxes and fees rather than the $68,500 she was intended to receive from his pension and TDSP accounts. Thus, obligor requests that we reduce his maintenance obligation so that he can recoup the difference. We find no merit in this argument, as the language of the stipulation and order reflects "the parties' understanding and intention that [wife] will realize a *minimum* of $68,500 once all penalties, taxes and any related fees are paid." (Emphasis added.) Whatever may have been husband's expectation, the order clearly provides that $68,500 is a floor and not a firm amount.

¶ 36. We are left then with obligor's argument that a change of circumstances occurred because wife is being supported at a higher standard of living by her new partner. The trial court never responded to this argument either in its initial decision or in its denial of the motion to reconsider. Moreover, the court never held a hearing on the motion.

¶ 37. Under Vermont Rule for Family Proceedings 4(j)(2), obligor was required to support his motion for modification with an affidavit. The affidavit needed to "set forth specific facts sufficient to warrant the required findings." V.R.F.P. 4(j)(3). Obligor submitted an affidavit that stated, among other items, that at the time of the stipulation "plaintiff and her boyfriend were parting ways and plaintiff was going to be looking for housing of her own," and that "plaintiff and her boyfriend have reconciled, making their relationship one of almost five years." It also stated that at the time of the stipulation "she would be on her own for housing," whereas at the current time (June 2004), she was in "a long term relationship with a financially secure partner, several vacations, new vehicles and multiple homes." With one exception, we agree with husband that the affidavit was sufficient to state a case for modification under the standards we have announced above and to obtain an evidentiary hearing.

¶ 38. The one exception is that the motion and affidavit did not show that the former spouse's financial circumstances were unanticipated. As she argues, her circumstances at the time of the family court hearing were exactly those present at the time of the stipulation or, as in *Gil*, a logical extension of those circumstances. 151 Vt. at 600, 563 A.2d at 626 (holding that it was not unanticipated that "cohabitating parties would eventually share expenses"). As obligor admits, wife's cohabitation had gone on for a substantial period of time, approaching

five years. Although not precisely addressing the situation presented by obligor, the stipulation addressed the effect of the relationships with the new partners on the maintenance obligation, even specifying the partners by name. Although obligor's expectation may differ from how the facts developed, it is the circumstances and not the expectation that controls. *DeKoeyer*, 146 Vt. at 495, 507 A.2d at 963. If obligor desired to claim a change of circumstances when wife remained in her relationship, rather than leaving the relationship, he should have included this eventuality in the stipulation or sought it in the court order. For this reason, we conclude that the family court was correct in denying obligor's motion to modify, even without a hearing.

*The family court's decision in Miller v. Miller, No. 2004-232 is affirmed.*

*The family court's decision in Smaller v. Smaller, No. 2004-187 is reversed, and the prior maintenance order is reinstated.*

*The family court's decision in Loubengeiger v. Weaver, No. 2004-402 is affirmed.*

¶ 39. **Reiber, C.J.**, concurring in part, dissenting in part. Because I believe that the trial court acted within its discretion in finding changed circumstances in *Smaller v. Smaller*, I dissent from the majority's opinion in that case. Although I would remand for additional findings of fact, it was not error for the family court to consider the economic effects of wife's cohabitation arrangement in its analysis of changed circumstances.

¶ 40. Pursuant to 15 V.S.A. § 758, the family court may modify a maintenance order "upon a showing of a real, substantial, and unanticipated change of circumstances." As the majority recognizes, the family court has discretion in determining whether changed circumstances exist, and this Court will not disturb its determination "unless the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." *Taylor v. Taylor*, 175 Vt. 32, 36, 819 A.2d 684, 688 (2003). By concluding that the sharing of household expenses, in addition to cohabitation, can never constitute changed circumstances, the majority deprives the family court of its ability to fully exercise its discretion in considering motions to modify. Specifically, in *Smaller*, I believe that the family court acted within its discretion in considering the significance of the "financial security" provided to wife by her cohabitation arrangement. See 15 V.S.A. § 752(b)(1) (requiring court, in

fashioning maintenance award, to consider "financial resources" of party seeking maintenance, among other factors); *Taylor*, 175 Vt. at 39, 819 A.2d at 690 (recognizing that recipient spouse's "improved financial security" will support modification of maintenance award); *Bullard v. Bullard*, 144 Vt. 627, 629, 481 A.2d 1049, 1051 (1984) (observing that because original maintenance decree "takes into consideration the financial capabilities and prospects of both spouses, it is only reasonable and fair that in considering a modification of that original order, a court examine the evidence relating to the change in financial circumstances of either or both spouses").

¶ 41. The family court found that at the time of the parties' divorce wife was living in the marital residence but spending several nights a week at the home of her boyfriend, Tony Garland. After the divorce, wife rented her own apartment, and Mr. Garland moved in five months later. Mr. Garland continues to live with wife, and he does not maintain a separate residence. While the court did not make specific findings as to Mr. Garland's income or his ability to contribute, it did find that he works full-time but does not pay rent or contribute to the household expenses.

¶ 42. Based on this evidence, the court concluded that husband had established a real, substantial, and unanticipated change of circumstances since the final divorce order. Since that date, the court explained, wife had been involved in a long-term relationship with Mr. Garland, and the two now lived together in her home. The court concluded that, regardless of whether Mr. Garland actually shared expenses with wife, if he had the ability to do so, he lived in the same household, and he earned an income, then this constituted another source of support and income that was potentially available to wife. In other words, the court reasoned, wife could not avoid a modification of spousal support by allowing her partner to live with her rent-free, even though he was working full-time, simply because she did not want her maintenance award to be modified. The court explained that wife could choose not to have Mr. Garland pay for half of the rent or the utilities, but it was unfair to make husband pay for wife's decision. It therefore reduced husband's maintenance obligation by $350, which was approximately half of the rent and the utilities.

¶ 43. The majority holds that the family court erred in finding changed circumstances because the family court's conclusion rested on its sense of injustice rather than any substantial change. According to the majority, any financial savings that a recipient spouse realizes from the sharing of household expenses alone cannot constitute changed

circumstances. See *ante*, ¶ 20 (recognizing that sharing of household expenses may produce some measure of financial improvement but holding that this improvement alone cannot be changed circumstances unless Court is prepared to hold that former spouse who takes in a roommate to reduce expenses will similarly lose such savings because of an offsetting reduction in maintenance). The majority thus concludes in *Smaller* that, even if wife's partner had contributed equally to the expenses of the household, this alone would not constitute a substantial improvement in wife's financial circumstances so as to warrant a modification of maintenance. *Id.* ¶ 30.

¶ 44. I cannot accept this conclusion. First, living with a roommate would not constitute "cohabitation" as defined by the majority, and thus its roommate analogy is inapt. See *ante*, ¶ 19 ("To constitute changed circumstances, cohabitation must approach the permanency of marriage. Thus, any claim of changed circumstances must include 'some permanency or long-term relationship.'") (quoting *Combs v. Combs*, 787 S.W.2d 260, 262 (Ky. 1990)). More importantly, I am not prepared to conclude that the sharing of household expenses, in addition to the existence of a long-term relationship, can never constitute changed circumstances. Indeed, in a cohabitation case (not a "roommate" case), it is difficult to conceive of a situation where a court could find changed circumstances in the absence of such economic factors.

¶ 45. While the majority states that it adopts "the majority rule for cohabitation situations," *ante*, ¶ 18 (citing *Smith v. Mangum*, 747 P.2d 609, 611 (Ariz. Ct. App. 1987)), the majority rule does not foreclose a trial court from considering evidence of shared expenses in determining whether changed circumstances exist. See *Mangum*, 747 P.2d at 612 (holding that, although cohabitation is not, in itself, the de facto equivalent of marriage that would warrant modification of spousal maintenance, "all evidence relating to the economic nature of the relationship between [wife] and [cohabitant] would be relevant and admissible to show that [wife's] support needs have changed"). To the contrary, the cases cited by the majority support the proposition that the sharing of household expenses is a proper factor for the trial court to consider in determining if changed circumstances exist in a cohabitation case.

¶ 46. In *Van Dyke v. Steinle*, 902 P.2d 1372 (Ariz. Ct. App. 1995), for example, the court explained that "[t]he 'focal point' of the court's inquiry in a cohabitation situation is the recipient's need for continued support," *id.* at 1378 (quoting *Mangum*, 747 P.2d at 612), and thus a

court should conduct a factual inquiry into the economic effect that the cohabitation actually has on the supported spouse. *Id.* at 1382. As the *Van Dyke* court observed, "only evidence relating to the economic nature of the cohabitation would be relevant" to show that a recipient spouse's support needs have changed since the final divorce decree. *Id.* at 1378. The *Van Dyke* court concluded that a factual question existed as to whether wife's cohabitation resulted in changed circumstances, and it held that, on remand, the trial court could consider house maintenance and repairs performed by wife's cohabitant, as well as "any other reductions in wife's household expenses, or expenditures she incurs by the addition of [the cohabitant] to her household" to determine to what extent, if any, wife's spousal maintenance should be reduced. *Id.* at 1384.

¶ 47. In *Lombardo v. Lombardo*, 992 S.W.2d 919, 923 (Mo. Ct. App. 1999), another case cited by the majority, the court recognized that "trial courts should be allowed to take into account the third party's support of the receiving spouse, and the receiving spouse contributions to the support of the third party" in determining whether a cohabitation arrangement has resulted in a substantial and continuing economic change of circumstances. *Id.* The Nevada Supreme Court reached a similar conclusion in *Gilman v. Gilman*, another case on which the majority relies. 956 P.2d 761, 764 (Nev. 1998) (explaining that those courts who have adopted the majority rule in cohabitation cases "hold that alimony payments used to benefit the cohabitant should be eliminated or reduced to meet the recipient spouse's actual needs"). The *Gilman* court recognized the "economies of scale" that can result from cohabitation, and it emphasized that the "economic needs" test that it adopted allowed the "lower courts to focus upon the specific facts of each case, while retaining their substantial discretion when making spousal support modification decisions." *Id.* at 765-66; see also *In re Marriage of Schroeder*, 238 Cal. Rptr. 12, 15 (Ct. App. 1987) (recognizing that cohabitation may reduce the need for spousal support because sharing a household gives rise to economies of scale and, more importantly, the cohabitant's income may be available to the recipient spouse); *Van Gorder v. Van Gorder*, 327 N.W.2d 674, 679 (Wis. 1983) (recognizing that where cohabiting couple share expenses, it may be appropriate to decrease or terminate maintenance payments because, under some circumstances, two people living together can live more cheaply than if they lived separately, but noting that certain living expenses, such as rent, would in many cases be the same whether the recipient spouse lived alone or not).

¶ 48. Here, the trial court acted within its discretion in concluding that wife's financial situation has changed since the date of the final divorce order. The family court's consideration of the "financial security" afforded wife by her cohabitation arrangement is consistent with this Court's holding in *Taylor*. In *Taylor*, the obligor argued that his ex-wife, as a result of her remarriage, had "access to such income and wealth that she no longer need[ed] maintenance." 175 Vt. at 39, 819 A.2d at 690. Although we did not hold that the motion to modify should necessarily be granted, we recognized that wife's improved "financial security" provided proper grounds for the motion to modify. *Id.* Moreover, we note that in *Miller v. Miller*, discussed above, the family court concluded that there had been a substantial improvement in wife's financial circumstances based on its finding that wife's new husband had the "financial capacity" to contribute $1000 per month toward the support of their joint household. This is precisely the type of "financial security" that is relevant in considering a motion to modify, and the majority errs by foreclosing the family court from considering it. To hold, as the majority does, that shared expenses between cohabitants is never sufficient to show changed circumstances constrains the trial court's discretion and suggests that a recipient spouse might structure his or her living arrangement so as to avoid a modification of maintenance.

¶ 49. The majority recognizes that the family court has discretion in determining whether changed circumstances exist, *id.* at 36, 819 A.2d at 688, and as this Court has explained, "[t]here are no fixed circumstances for determining what meets this threshold, and . . . evaluation of whether or not any given change is substantial must be determined in the context of the surrounding circumstances." *Pigeon v. Pigeon*, 173 Vt. 464, 466, 782 A.2d 1236, 1238 (2001) (mem.) (quotations omitted). I believe that the family court in *Smaller* acted within its discretion in applying the relevant factors and concluding that a substantial change of circumstances existed where wife was involved in a long-term relationship, her boyfriend was living with her (rather than the other way around), he was employed and had the ability to contribute to household expenses, and he did not do so. It was not error to conclude that these factors significantly affected wife's financial security or "financial resources" and they justified modification of the initial maintenance award. In light of the absence of specific findings as to Mr. Garland's income and his ability to contribute, however, I would remand this case to the family court for additional findings.

¶ 50. I am authorized to state that Chief Justice Allen (Ret.) joins in this dissent.