2009 VT 77

## Suzanne Gravel v. Richard Gravel

[980 A.2d 242]

No. 07-486

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 24, 2009

252

*Benjamin W. King* of *Downs Rachlin Martin, PLLC,* Burlington, for Plaintiff-Appellee.

*Sheldon M. Katz* of *Clark, Werner & Flynn, P.C.,* Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** In this contested divorce action, husband appeals from the family court's maintenance award and division of marital assets. As for the division of assets, husband argues that wife's

portion of the property division was excessive, that the family court erred in applying the statutory factors listed in 15 V.S.A. § 751(b), and that the court erred in its valuation of husband's business. With respect to the maintenance award, husband argues that it is unsupported by the record and is excessive, in both duration and amount. Husband further argues that the court erred in not awarding wife the parties' small business in lieu of maintenance. Husband also argues that the court wrongfully held him in contempt. We affirm.

¶ 2. Husband and wife were married in 1993, and the marriage lasted thirteen years. At the time of the divorce, wife was forty-nine years old and husband was forty-eight. The parties owned two significant assets: the marital house and Northeast Handling Systems, Inc. (NHS), husband's crane sales, service, and maintenance business. The parties contested the fair market value of NHS, with both relying on the opinion of an expert witness. Wife's expert initially valued NHS at $153,000, and husband's opined that NHS was worth $85,000-125,000. As the testimony progressed, an issue arose regarding the proper year in which to credit an account receivable of approximately $110,000 and the effect the year of inclusion had on the experts' valuations. The business had credited this receivable to 2007, but wife's expert eventually testified that it should have been credited to 2006, and, as a result, that the valuation of NHS should be increased to $281,000. To ensure that the issue was properly developed, the court recessed the hearing and ordered the parties to engage in additional discovery with respect to the account receivable. Three months later the hearing resumed and the court heard additional testimony, but excluded the testimony of a new and additional expert witness offered by husband. Finding wife's expert more qualified and her opinion more reliable, the court adopted wife's expert's opinion and determined that NHS's fair market value was $281,000.

¶ 3. The family court decided to divide equally the value of the parties' two significant assets. The court awarded wife sole ownership of the marital home and husband sole ownership of NHS. The court awarded wife $70,000 to compensate for the disparity in the value of these two assets. The court ordered husband to pay wife a monthly sum, plus three percent interest, to pay off this debt over ten years.

¶ 4. The court determined that husband earned about $5,000 per month working at NHS, and wife earned $1,907 per month

working at a convenience store. The court awarded wife $1,500 per month for ten years in spousal maintenance.

¶ 5. After the court issued its written findings, husband moved for the court to correct errors or to order a new trial. The court considered husband's various arguments and rejected them in a written decision. Husband subsequently filed a motion to alter or amend the final order, requesting that the court award wife NHS in lieu of spousal maintenance. The court denied this motion.

¶ 6. Wife filed a motion for contempt and sanctions predicated on husband's failure to pay the amounts owed to her under the court's order. The family court found husband in contempt for nonpayment and ordered husband jailed daily from 5 p.m. to 5 a.m. until he paid this amount. Husband purged this contempt two days later. Husband appeals the division of marital assets, the maintenance award, and the contempt order.

¶ 7. Before we discuss the merits of this appeal, we address the approach husband's counsel has taken to this appeal. The arguments made in husband's brief refer to the trial judge personally by name and leave the impression that the judge, rather than wife, or her counsel, is husband's adversary. Indeed, husband's brief commences with the general accusation that husband's trial counsel, "if subpoenaed," would state that the judge "demonstrated a bias against [husband] off the record and engaged in improper conduct" and conducted the trial "in a biased manner." Husband's counsel argues in various ways that a normal standard of review should not apply to the decisions of a trial judge guilty of such misconduct. These kinds of statements are inappropriate in an appellate brief, and we warn husband's counsel that we consider them to be beyond the limit of proper advocacy. Wife is entitled to a decision based on the merits of the issues before us and not on husband's counsel's personal displeasure with the trial judge. We will accord the trial court discretion in its rulings where appropriate under our standard of review, despite counsel's improper assault on the judge's integrity.

¶ 8. We first address the property division and particularly the valuation of the marital assets. As noted, there were two significant assets in this case: the marital home and NHS. All the valuation issues relate to NHS and most involve the court's decision, as discussed above, that some of the accounts receivable had been allocated to the wrong year for purposes of determining the income of NHS from which the business could be valued by

the income capitalization method. Husband argued that because both the work and the income from the work occurred in 2007 the receivable should be credited to that year and not to 2006. He further argued that such receivables had been credited to the later year in the past and, although this receivable was much larger than had occurred in the past, its allocation followed past practice. The effect of this action, however, was to place extraordinary income beyond the time period for which a valuation could be determined.

¶ 9. Wife's valuation expert first offered a valuation consistent with treating the receivable as outside the valuation year of 2006, but questioned the allocation of the receivable to the later year. She testified that if the receivable were allocated to 2006, her opinion of the value of NHS would be much higher. As a result of this testimony, the trial court declared a three-month recess to allow wife discovery related to the proper year to which the receivable should be credited. This opening of the valuation issue caused husband to employ an additional expert witness to testify that the assignment of the receivable to 2007 was proper, but husband failed to disclose this witness until the eve of trial. Because of the late disclosure, the trial court as a discovery sanction refused to allow the expert to testify.

¶ 10. Husband raises two evidentiary issues with respect to the valuation: (1) the court erred in ruling that the testimony of husband's expert was irrelevant and therefore inadmissible, and (2) the court erred in prohibiting husband from cross-examining wife's expert witness. These arguments are puzzling because they do not reflect what actually happened. The testimony of the expert was excluded as a discovery sanction because husband failed to timely disclose this witness; he makes no argument here that the sanction was unsupported or excessive. Husband was able to extensively cross-examine wife's expert witness, but the court found irrelevant the particular question he cites on appeal, and he makes no argument that the question was relevant. Both of the challenged rulings involve trial court discretion. See *State v. Brochu*, 2008 VT 21, ¶ 49, 183 Vt. 269, 949 A.2d 1035 (relevancy ruling is discretionary); *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 18, 182 Vt. 282, 938 A.2d 1215 (decision to impose sanctions is discretionary and will be overturned only for abuse of that discretion). Husband has not addressed the exercise

of that discretion and certainly has not shown abuse of discretion. Accordingly, we find no error.

¶ 11. Husband challenges the substance of the valuation decision. As we summarized above, the court was faced with two expert valuations of NHS. The court found wife's expert's opinion more persuasive because she included the disputed $110,000 in the year the court determined was more appropriate. The court found that wife's expert was "more qualified" and that her opinion was "more reliable," and agreed that the business was worth approximately $281,000. Husband argues that the court abused its discretion by adopting wife's expert opinion because: (1) wife's expert changed her valuation methodology mid-trial; (2) her value defies common sense because the increase in value in the short life of the business was astronomical; (3) her valuation is too high in relation to annual sales; (4) NHS has no value beyond its physical tangible assets because it is totally dependent on husband's work; and (5) her valuation deviated from well-established valuation standards, because the capitalization rate wife's expert used failed to account for the risk due to NHS's size and earnings variability, and she relied on only one method of valuation. Husband also argues that the court erred in failing to determine whether NHS's historical information was a reasonable indication of its future earnings and in adopting wife's expert's assumed growth rate.

¶ 12. Some of husband's arguments — for example, the argument that NHS has no value beyond its physical assets because it is entirely dependent on husband's work — were not raised below and, therefore, were not preserved for appeal. See *Bell v. Bell*, 162 Vt. 192, 201, 643 A.2d 846, 852 (1994) (refusing to consider the wife's argument concerning payment of taxes on liquidation of a marital asset, given that the wife failed to raise the issue in her requested findings, her motion to amend, or otherwise at trial). As another example, husband argues that the court should have applied a greater discount for the lack of marketability of NHS, but husband's own expert did not apply a lack of marketability discount and husband did not specifically request that the family court apply a larger discount than that used by the experts. Thus, this claim was not preserved.

¶ 13. Of the remainder, most concern why the family court should have rejected the opinion of wife's expert. These arguments

are properly made to the trial court but are out of place here. See *Drumheller v. Drumheller*, 2009 VT 23, ¶ 68, 185 Vt. 417, 972 A.2d 176. It was within the trial court's discretion to choose between the experts' opinions, and it did not abuse its discretion in making its choice. "We defer to the family court's findings because that court is in a unique position to assess the credibility of witnesses and weigh the persuasiveness of the evidence." *Kasser v. Kasser*, 2006 VT 2, ¶ 19, 179 Vt. 259, 895 A.2d 134.

■ ¶ 14. Further, it was not error for the court to rely on wife's expert's assumptions. The use of assumptions cannot be avoided in valuing illiquid assets; it is not impermissible for a court to rely on an expert's assumptions. Cf. *Drumheller*, 2009 VT 23, ¶ 19 (recognizing that trial court's decision was based on expert opinion that used assumptions).

¶ 15. Husband claims further that the family court erred when it held that accrual accounting must be used for valuation. However, husband mischaracterizes the court's decision. The court did not hold that accrual accounting must be used for valuing NHS. Rather, the court was persuaded by wife's expert's testimony that the disputed $110,000 should have been included in the 2006 account receivables under the accounting methodology that NHS had adopted and by her opinion of NHS's value. Again, the issue comes back to the court's discretion to choose a valuation from the evidence before it. There is no error.

■ ¶ 16. Finally, with respect to the property award, we consider husband's arguments that wife's portion of the property division was excessive and that the family court erred in applying the statutory factors listed in 15 V.S.A. § 751(b). "The family court has broad discretion in dividing marital property, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds." *Kasser*, 2006 VT 2, ¶ 30. The distribution of property is not an exact science; all that is required is that the distribution be equitable. *Id.*

■ ¶ 17. The family court did not abuse its discretion in dividing the value of the parties' assets equally. The court considered the statutory factors, including the length of the marriage, the parties' ages, health, occupations, sources and amounts of income, vocational skills, and employability. The court found that the parties "generally built their estate together," except for the house, which the parties acquired at a below-market price due to the generosity

of wife's father and brother. The court also acknowledged that husband was able to start NHS due to a loan from husband's father. The family court concluded that an equitable division would be for wife to receive ownership of the house and husband ownership of NHS, with the payment of an equalization amount by husband because NHS was more valuable than the house.

¶ 18. Husband argues that the court failed to consider that NHS was acquired through husband, 15 V.S.A. § 751(b)(10); that husband alone built up the business, *id.* § 751(b)(11); and that husband had greater merit as shown by his military service, his hard work in building up NHS, and his financial support of wife's children from a former marriage, *id.* § 751(b)(12). In fact, the court did consider the statutory factors. Moreover, with respect to the comparative merit of the parties, the court concluded that the primary cause of the marital breakup was husband's controlling and abusive behavior, including threats of violence. We conclude that the court's evaluation of the statutory factors was within its discretion.

¶ 19. Next, we address husband's arguments concerning the maintenance award. The court did an extensive analysis of the parties' income and expenses and concluded that wife had monthly expenses of approximately $3,150 and an annual income of $22,800, and husband had monthly expenses of $4,150 and an annual income of at least $60,000. The court found that both parties were each working to their potential, but that husband would have greater opportunity to acquire capital assets in the future. Thus, it concluded that wife lacked sufficient income and assets, including those from the property settlement, "to provide for her reasonable needs . . . at the standard of living established during the marriage" without maintenance. In light of the length of the marriage of thirteen years, the middle class standard during the marriage, the ages and income levels and expenses of the parties, the court ordered maintenance of $1,500 per month for ten years. In response to husband's motion to correct or grant a new trial, the court explained that it believed that a rough initial equalization of income was appropriate and that its order was based on the factors in § 752.

¶ 20. Before we analyze husband's objections to the order we note that neither side has appealed whether time-limited maintenance was appropriate in this case. Our precedents have

generally equated time-limited maintenance with rehabilitative maintenance — that is, maintenance to support the recipient spouse while he or she becomes self-sustaining. See *Miller v. Miller*, 2005 VT 122, ¶ 32, 179 Vt. 147, 892 A.2d 175 ("The maintenance awarded is time-limited and, thus, rehabilitative."). In only one decision, *Slade v. Slade*, 2005 VT 39, ¶¶ 6-8, 178 Vt. 540, 872 A.2d 367 (mem.), have we reviewed a decision in which the trial court appeared to impose a time limitation for a purpose other than rehabilitation. In that case, we upheld the length of the maintenance award in response to the wife's insistence on a longer duration on the ground that it was justified by the length of the marriage. *Id.* ¶¶ 7-8.

¶ 21. In this case, wife worked at jobs throughout the marriage and had a full-time job consistent with her earning potential at the time of the divorce hearing. There is no indication that the court imposed the time limitation with the expectation that wife would be fully self-supporting at the standard of living established during the marriage when the maintenance terminated. Thus, we understand that the maintenance award was not for a rehabilitative purpose. As in *Slade*, this case does not require us to determine the permissible grounds for term limitation, and we do not do so. Although the trial court did not state so explicitly, we infer that the court in this case followed *Slade* in imposing the time limit because of the limited duration of the marriage.

¶ 22. Husband generally argues that wife's maintenance award is not supported by the record, reflects no consideration of the statutory factors, and that it is excessive in both duration and amount. His position is that the length of the marriage — thirteen years — was short, that the duration of the award is essentially permanent, that wife's needs were covered by the property award, and that there is no ground for an award to wife of compensatory maintenance because she did nothing to support or enhance husband's business. Based on these circumstances, husband argues that the award was error.

¶ 23. The family court may award maintenance to a spouse when it finds that the spouse "lacks sufficient income, property, or both . . . to provide for his or her reasonable needs" and the spouse "is unable to support himself or herself through appropriate employment at the standard of living established during the marriage." 15 V.S.A. § 752(a). The statute sets forth seven nonexclusive criteria on which the court is to base its award,

including the financial resources of the party seeking maintenance, the property apportioned to that party, that party's ability to meet his or her needs independently, the time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of each spouse, the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while meeting those of the spouse seeking maintenance, and inflation. *Id.* § 752(b). The family court has considerable discretion in determining the amount and duration of maintenance once grounds for the award are established under the statutory criteria, and a maintenance award will be set aside only if there is no reasonable basis to support it. *Chaker v. Chaker*, 155 Vt. 20, 25, 581 A.2d 737, 740 (1990).

¶ 24. Spousal maintenance has multiple purposes, including "to correct the . . . inequality of income resulting from the divorce," "to equalize the standard of living of the parties for an appropriate period of time," "*to assist the recipient-spouse in becoming self-supporting*," and "to compensate a homemaker for contributions to family well-being not otherwise recognized in the property distribution." *Strauss v. Strauss*, 160 Vt. 335, 338-39, 628 A.2d 552, 554 (1993). The trial court intended to equalize the standard of living of the parties for an appropriate period of time, a purpose consistent with our decisions and the statute. Husband argues, however, that even if the trial court equalizes the standard of living for some time, the award was essentially permanent and cannot be justified in a short term marriage. He asserts that in *Delozier v. Delozier*, 161 Vt. 377, 640 A.2d 55 (1994), we held that a marriage must be at least fifteen years in length to be considered long term and justify a permanent maintenance award.

¶ 25. Husband overstates the holding in *Delozier* and ignores our explicit statements that "there is no precise point at which marriages are defined as 'long term' " and that "we will not draw lines based on this one factor" of the length of the marriage. *Id.* at 383, 640 A.2d at 58. More importantly, this is not a permanent maintenance award. As in *Slade*, the duration of the

maintenance award is shorter than the length of the marriage. We must affirm here for the same reason that we affirmed in *Slade*. Husband has a good prospect of continuing to grow his business and, therefore, his income, while wife's opportunities for advancement are very limited. The court determined that absent maintenance, wife would be unable to provide for her reasonable needs at the standard of living established during the marriage and designed an award that would equalize the parties' financial status initially and at least partially for a ten-year period. Because the court considered the length of the marriage, the role wife played during the marriage, and the income wife is likely to obtain in relation to the standard of living set in the marriage, and designed an award to achieve the appropriate purposes of maintenance, we find that the award was just in light of all the facts and circumstances of this case and within the court's discretion.

¶ 26. Husband argues that the maintenance award does not consider the property award and, as a result, does not equalize living standards, but instead leaves him with less income than wife and unable to meet his basic needs. In making this argument, husband includes the property equalization payments he owes wife as a monthly expense, payable out of current income. This argument ignores that he received the entire ownership of NHS, an asset worth $281,000 — double the value of the property awarded to wife. The $674 monthly payment represents the $70,000 owed to wife to equalize the distribution of marital assets over 120 months at an interest rate of three percent. To offset this payment against maintenance would give husband double credit for paying this obligation.

¶ 27. After excluding the property award from husband's monthly expenses, the court did roughly equalize the parties' living standards. Based on husband's estimates of his expenses, including rent, the court determined husband's monthly living expenses to be roughly equal to wife's expenses of $3,150, plus an additional $1,000 for income taxes because his income is larger than wife's. The court noted that its maintenance award would change the parties' respective income tax liability. The court conservatively estimated that husband's monthly income was $5,000. After payment of his monthly expenses of $3,150 and $1,500 in maintenance, husband would have left $350 for the

payment of his additional, but reduced, taxes.[1] Even if husband's income tax liability exceeds this amount, we are not persuaded that the court failed to consider husband's ability to meet his reasonable needs. The family court noted that the combined expenses of husband and wife exceeded their combined income — it is not exceptional that, post-divorce, husband's expenses exceed his income. Further, because of the increased cost of maintaining two households post-divorce, it is only reasonable that both parties must lower their expenses and standard of living. While the reasonable needs of a party are determined in light of the standard of living established during the marriage, *Naumann v. Kurz*, 152 Vt. 355, 357, 566 A.2d 1342, 1343 (1989), if the income of the parties is unable to support that standard of living, both parties must lower their expenses and adjust accordingly. Moreover, we are not swayed by husband's arguments that his post-divorce expenses have increased as these facts are not properly before us in this appeal of the maintenance award.

¶ 28. Husband makes two additional arguments with respect to maintenance. Husband contends that maintenance should be based on an objectively reasonable work week and that the court failed to account for the fact that he works sixty to seventy hours per week while wife works only forty hours. We conclude that this argument was not raised below, and, as a result, is not properly before us.

¶ 29. Husband further contends that the court erred in not awarding wife ownership of NHS in lieu of maintenance. After trial, husband made a motion to alter the judgment requesting that wife be awarded NHS in lieu of spousal maintenance. The court denied this motion, reasoning that, if this occurred, husband would abandon operating NHS. This would leave wife in the position of running NHS herself, for which she is unqualified, or selling a closed business, which would be worth less than an operational one. Husband argues to this Court that because wife's expert valued NHS as a passive investment worth $281,000, the court should have awarded her ownership of NHS in lieu of maintenance that has a present value of $225,000, which would result in a financial boon to wife.

---

[1] Note that wife's monthly expenses are $3,150, and her monthly income, including the maintenance award, is approximately $3,400. Wife has only $250 left to pay her increased income taxes.

¶ 30. While the family court has the discretion to make an award of property in lieu of maintenance, *Cabot v. Cabot*, 166 Vt. 485, 500-01, 697 A.2d 644, 654 (1997), we see no reason why it is required to do so or, in this case, why it would be an abuse of discretion to fail to do so. The court could conclude that leaving husband and wife joined in a business relationship was untenable.

¶ 31. Husband's final argument is that the court erred in holding him in contempt for failing to make the payments specified in the divorce order. We decline to address the merits of the issue because husband paid the outstanding amounts, purging his contempt and rendering this issue moot. As we held in *Miller v. Miller*:

> Civil contempt is essentially a coercive measure designed to compel compliance with a court order, and as such the contemnor always retains the power to purge or terminate the sanction through compliance. Accordingly, it is well settled that a contemnor who chooses this option renders the contempt order moot and unappealable, for the court is then left with no means to grant effectual relief.

2008 VT 86, ¶ 31, 184 Vt. 464, 965 A.2d 524 (quotation and citation omitted). For the same reason, the appeal relating to the order is moot here.

¶ 32. We have previously recognized an exception to the mootness doctrine for cases that are capable of repetition, yet likely to evade review. See, e.g., *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 101 (1997). Husband contends that this is such a case, and that we should therefore consider the merits of his appeal despite the lack of a live controversy. However, husband argues that he should not have been held in contempt because he was unable to pay, and that the trial judge was biased and not competent to sit as an impartial fact finder on the contempt motion. Even if we take as true husband's assertion that a contempt motion is likely to recur, neither of the issues husband raises before us now are likely to recur. Husband's ability to pay is a highly fact specific inquiry, and his ability to pay in December 2007 — the time of the contempt order at issue here — would not be determinative of his ability to pay in the future. Any new contempt order would be based on contemporaneous facts, and as such, it would not be appropriate for us to apply the exception to

this case. See *State v. Gundlah*, 160 Vt. 193, 196, 624 A.2d 368, 370 (1993) (holding that exception to mootness doctrine did not apply because repetition of fact pattern was unlikely). Further, since this appeal has been filed, the trial judge granted husband's motion to disqualify him from further proceedings involving husband.[2] Since both of these issues have little chance of being repeated, we decline to apply this exception and reach these issues.

*Affirmed.*

---

[2] The trial court granted husband's motion to disqualify in April 2008, even though the court did not agree with the assertions in the motion. We express no opinion on whether this recusal was necessary. But as it has occurred, there is no likelihood that the question of whether this judge should be disqualified from ruling on a contempt motion will recur.