*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-147

FEBRUARY TERM, 2017

| | |
|---|---|
| Marcus Rawls | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| v. | } Family Division |
| | } |
| | } |
| Laluni Rawls | } DOCKET NO. 315-10-14 Frdm |

Trial Judge: Robert A. Mello

In the above-entitled cause, the Clerk will enter:

Wife appeals the property division and maintenance portions of a final divorce order. On appeal, wife argues that the court erred in failing to award her permanent spousal maintenance or a portion of husband's pension. Wife also contends that the court provided no mechanism for her to confirm that husband is complying with the requirement that he maintain the children as beneficiaries to his term life insurance policies. We reverse and remand.

The parties were married in February 1997. When they met, they both had high school diplomas and were serving in the U.S. Air Force. Wife has a child from prior to the parties' marriage that husband adopted. The parties had three more children in October 1996, August 1998, and March 2001. In the spring of 1998, wife resigned from the military. She was the primary care provider for the parties' children and home schooled the children. Husband continued to be employed by the military. He was deployed overseas and his absence caused a strain on the marriage. Husband left the Air Force and went to work for the Air National Guard as a recruiter in 2005. At that time, the parties were living in Washington state. In 2008, the family moved to Vermont.

When the parties lived in Washington, they took out a second mortgage on their home using a home equity line of credit from USAA (HELOC loan). When they moved and bought a house in Swanton, they were unable to sell the house in Washington state for several months. When they did find a buyer the purchase price was less than what was owed on the mortgages. The first mortgagee agreed to accept the proposed purchase price and waive the remaining deficiency. The second mortgagee, USAA, refused to discharge the mortgage and at the time of the final hearing the parties still owed USAA $21,495.84 on the loan.

The parties separated in February 2012. In July 2013, husband transferred to a position in Arkansas.[1] During the separation, husband continued to support wife and the children. He began paying $3800 a month, and later $3000 a month, by agreement until August 2014.

---

[1] In November 2014, husband purchased a house in Arkansas.

In 2013, husband withdrew $12,500 from an IRA account and used the funds to cover his living expenses. In December 2013, husband voluntarily quit-claimed his interest in the marital home to wife. In May 2014, husband cashed out a $35,000 thrift-savings plan and gave the money to wife. This was a tax-deferred benefit from husband's employment with the Air Force. Husband incurred almost $7000 in penalties and tax liability for the early withdrawal. Wife used most of the money to buy a new car.

Throughout the parties' separation they filed joint income taxes. For tax years 2012 and 2013, the parties received refunds, which they split equally. For tax year 2014, the parties owed federal taxes, but received a refund on state taxes. Husband gave wife the entire state refund to make up for the fact that she had been paying the credit card debts since September 2014.

In 2014, the parties signed a stipulation dividing their assets and liabilities. The trial court found that they were not represented at the time they entered the agreement, although the stipulation filed with the court reflects that at that time husband was represented by counsel. Under the stipulation, wife received the marital home and an IRA account held in her name. Husband agreed to be solely responsible for the tax liability from cashing out his thrift-savings plan as well as the HELOC loan and two credit card debts. Husband agreed to pay wife spousal maintenance of $1917 until August 2018, $1000 until May 2019, and then $750 until August 2023. He was also required to cash out the remaining $6500 balance of his IRA account and pay that to wife.[2] Wife agreed that husband would receive his military benefits, including his retirement benefits. The parties also agreed that husband would pay $658 a month in child support for the three minor children. The agreement acknowledged that it was a compromise based on the fact that husband had assumed the parties' outstanding debt.

Husband filed for divorce in October 2014.[3] The matter was initially set for an uncontested hearing, but was rescheduled for a contested hearing after the husband informed the court that he was disavowing the stipulation because he could not afford to pay the HELOC and credit card debts as well as provide the agreed amounts for maintenance and child support.

After two days of evidence, the court made the following findings. The marital home was worth $326,000 with a mortgage of $294,000, leaving equity of $32,049. The personal property in the home was worth $3550. The Arkansas home was worth $139,000 with a mortgage of $135,420. Husband had personal property worth $12,000.

As of the final hearing, the parties owed $10,811 and $18,257 on two credit cards and $21,495 on the HELOC loan.[4] Each of the parties was liable on a student loan on behalf of their

---

[2] In January 2015, husband withdrew the remainder of his IRA account and paid it to wife as promised in their stipulation.

[3] The parties also had an agreement on parental rights and responsibilities, which assigned wife primary legal and physical rights and responsibilities, with contact for husband on holidays, vacations, birthdays, and other times. The court incorporated the parties' agreement in the final order and neither party has appealed that portion of the order.

[4] Husband had not made any payments on the credit cards since August 2014 and stopped making payments on the HELOC loan in August 2015 because he stated he could not afford to pay those debts and also cover his living expenses and the maintenance and child-support payments to wife. Wife refused husband's suggestion that the parties file for bankruptcy to discharge these

oldest child—husband in the amount of $9432, and wife in the amount of $7481. In addition to the debts described above, husband has post-separation personal credit card debt of $11,000 and owes attorney's fees.

Husband is forty years old and in very good health. His entire career has been with the military. He earns $6622 a month. His living expenses are $2400, not including payroll withholdings, debt payments, maintenance, or child support. He has five term life insurance policies benefitting wife and the children. They do not have a cash value. Husband plans to retire in May 2017, at which time he will receive $2343 monthly in military retirement benefits. From that, the military would deduct $152 per month to fund an annuity for wife as a survivor's benefit. He has earned a Bachelor's Degree in business administration and should be able to obtain civilian work after retirement so that his income in the foreseeable future (counting the military retirement plus wages from civilian employment) will likely remain the same after retirement.

Wife is forty-four and generally in good health except for an arm injury sustained in the military. Wife joined the Air Force in 1989 and resigned in 1998. She was a fast learner. She obtained a Bachelor's Degree in business administration and was completing training as a medical transcriptionist. She worked in the home for seventeen years and continues to homeschool two children. The court found she will be able to earn $30,000 annually beginning in the fall of 2016, and $40,000 by the fall of 2018. She also receives a military disability payment of $930 monthly, which will decrease as her children grow and are no longer dependents. Her living expenses are $3750.

With respect to property division, the court considered the statutory factors and noted that the parties had agreed that each should retain the assets they had already received. For wife, this included: the marital home, with equity of $32,049, husband's thrift savings account of $35,010 tax free, wife's IRA account of $19,000, husband's $6500 IRA account, half the 2012 and 2013 tax refunds, all of the state tax refund for 2014, two vehicles,[5] personal property worth $3800, and $9500 in savings. Husband received considerably fewer assets: an IRA of $12,500, one half of the 2012 and 2013 tax refunds, his Arkansas house with equity of $3580, and $12,000 in personal property.

The main disagreements were whether wife should receive a portion of husband's retirement benefit, which party should assume responsibility for the HELOC loan and the two credit card debts, and the amount and duration of spousal maintenance. The court awarded husband his retirement benefits free and clear from any claim by wife, but made him responsible for over $50,000 in marital debts—both joint credit card debts and the HELOC loan. In addition, the court ordered husband to reimburse wife for interest she paid on these loans during the separation period and for $5000 in attorney's fees.

In explaining its conclusion that the property division was fair and equitable, the court pointed to the fact that it was consistent with the parties' initial settlement agreement; that awarding nearly all the parties' current assets to wife and the debt to husband was fair because wife, having been a stay-at-home mom for so many years, was not as immediately employable as husband; and that awarding the marital home to wife was appropriate because wife had custody of

---

debts. She was concerned about her credit rating. Until the summer of 2015 she continued to pay on the credit cards and until the final hearing she made payments on the HELOC loan.

[5] Wife bought one of the vehicles with the money husband gave her from the thrift-savings account.

the parties' minor children and that was their home. The court concluded that it was equitable that husband keep his retirement account because of the disproportionate amount of the parties' other assets that the court awarded wife, her entitlement to an annuity under his retirement plan, and the court's spousal maintenance award.

As to maintenance, wife sought permanent maintenance in decreasing amounts beginning at $2868 monthly; husband offered to pay $1500 a month in decreasing increments to end in 2020. The court determined that the amounts agreed to in the parties' original-but-now-withdrawn stipulation were fair and ordered husband to pay $1917 monthly until August 2018, $1000 until May 2019, and $750 monthly until August 2023. The court explained that this spousal maintenance award was consistent with the parties' prior stipulation. It noted the significant disparity in the parties' income due primarily to wife's staying at home to care for the parties' minor children. With an income of $80,000 per year, even if husband retires from the military, the court explained, husband can afford to pay a reasonable amount of spousal maintenance and still meet his own reasonable needs. Wife, on the other hand, needs spousal maintenance, especially over the next few years as she acquires new skills and reintegrates into the work force. The court noted that it was requiring spousal maintenance into 2023, even though wife should have become financially self-sufficient well before then, as compensation for wife's contributions to the family during the parties' fifteen-year marriage.

After the court issued its final order, which required husband to maintain his term life policies with the children as beneficiaries, wife sought an order requiring husband to get an insurance binder requiring notification to wife and/or the children should husband fail to maintain the policies. The trial court denied the request without explanation in an entry order.

Wife appeals, arguing that after a nineteen-year marriage[6] in which she stayed home and raised the parties' children while husband increased his earning power, the court abused its discretion by failing to compensate her with permanent spousal maintenance or a portion of husband's pension, or both. She also appeals the trial court's denial of her post-judgment request to require husband to get a binder on his insurance policies.

In dividing property, the court exercises broad discretion. Gravel v. Gravel, 2009 VT 77, ¶ 16, 186 Vt. 250. This court will affirm the decision "unless its discretion was abused, withheld, or exercised on clearly untenable grounds." Id. (quotation omitted).

We cannot properly evaluate wife's claim to more spousal maintenance without considering the court's property division, and vice versa. In awarding husband the entirety of his pension benefits, the trial court pointed to the spousal maintenance award as a factor that offset this imbalance. See 15 V.S.A. § 751(b)(7) (whether the property settlement is in lieu of or in addition to maintenance is a factor in the property division analysis); see also 15 V.S.A. § 752(b)(1) (property division a consideration in spousal maintenance analysis). A trial court's award to wife of a relatively small share of the marital estate by way of property division may be entirely equitable when joined with a relatively robust spousal maintenance award. See, e.g., Taylor v. Taylor, 175 Vt. 32, 36-37 (2002) (explaining that "a maintenance award may reflect an intent to recompense for the contribution of a homemaker to the family's well-being which was not otherwise made (presumably in the property division)") (quotation omitted)). Likewise, the

_____

[6] The parties separated in 2012. They did not file for divorce until 2014, and the final divorce order was issued in 2016. This timeline explains the discrepancy between wife's characterization of the marriage as a nineteen-year marriage and the court's finding that it was a fifteen-year marriage. Our decision does not turn on which characterization is more accurate.

4

trial court has the discretion to award wife a disproportionate share of the marital property, while limiting husband's obligation to pay spousal maintenance. But it should not short wife on both fronts.

With respect to the property division, on appeal the parties present slightly different tallies of the total debt and assets awarded to each party by the trial court. The main distinguishing feature is that husband's tally includes some funds that wife received and penalties that husband paid during their separation whereas wife tallies the debts and assets on a going-forward basis. Setting aside for the moment the value of the retirement benefits, wife contends that the trial court's property division left wife with $51,918 in assets and husband with $65,663 in debt. Husband contends that the court's order left him $73,180 in debt and wife $112,428 in assets.[7] The distinction between the parties' tallies is not critical to our analysis because the value of husband's retirement benefits appears to be an order of magnitude greater than any of the parties' assets or debts and dwarfs the differential between their respective property awards, even using husband's numbers.

This fact underlies the critical problem with this appeal. The trial court made no findings approximating the value of the marital portion of husband's retirement benefits in its otherwise thorough written decision. The parties themselves did not offer any evidence or argument as to the value of the benefits. But, though the evidence was sparse, there was sufficient evidence of a substantial and long-term future income stream to husband on account of his pension to enable the trial court to approximate, generally, the value of the pension, and, more particularly, the marital portion of the pension. In particular, husband offered evidence that he would have an estimated retirement income, based upon a date of retirement of June 30, 2017, in the amount of $2343 monthly, less the $152 per month withdrawn to fund a survivor annuity for wife.

Whether the property division was equitable in light of the modest spousal maintenance award depends generally on the value of the pension, especially given that the court awarded the pension as part of its property division analysis. A remand is required to evaluate the value of this asset. See Hendrick v. Hendrick, 142 Vt. 357, 360 (1982) (remanding for valuation of asset). Certainly, any value would be approximate given the lack of definitive evidence presented, but "[t]he court's ability to specify a value is limited by the evidence before it, and it sometimes must use approximations." Mills v. Mills, 167 Vt. 567, 568 (1997) (mem.); see also Hobson v. Hobson, No. 2016-038, 2016 WL 4472410, *5 (Vt. August 19, 2016) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2011Present/eo16-038.pdf (remanding for findings where it was unclear whether trial court completely discounted value of a potentially major asset or concluded that the receivables had a substantial value and awarded them to husband with that understanding).

In the face of this very substantial factual uncertainty, we cannot uphold the trial court's award based on the factors it cited. The fact that wife, in the uncounseled stipulation she and husband originally filed with the court, agreed to assign husband's full pension to him, may be a factor in the analysis, but is not determinative. See Pouech v. Pouech, 2006 VT 40, ¶ 22, 180 Vt. 1 (explaining that where parties execute stipulation in anticipation of divorce the court can consider it but must still assure that property is divided fairly and equitably in light of statutory factors). It

---

[7] Husband's accounting partly double-counts the money wife received from the thrift-savings plan during the parties' separation, counting that money once as cash, and then counting the value of the car wife bought with the money.

was, after all, husband who backed away from the parties' previous agreement and required a contested hearing.

Likewise, the fact that wife may be entitled to a survivor annuity if she outlives husband cannot rescue the potential inequity of the court's property division. Wife is older than husband, their relative life expectancies were not in evidence, and the parties did not purport to value this benefit. Wife's contingent future interest in a more modest income stream cannot outweigh the present, immediately vested interest in a permanent and substantial income stream to husband.

Finally, the court's spousal maintenance award is not so favorable to wife as to counterbalance the lopsided property award to husband. A court may award spousal maintenance "if it finds that the spouse seeking it lacks adequate income or property to provide for his or her reasonable needs, and the spouse cannot support himself or herself at the standard of living enjoyed during marriage." Jenike v. Jenike, 2004 VT 83, ¶ 9, 177 Vt. 502 (mem.); see 15 V.S.A. § 752(a). In setting a maintenance award, the court must consider several statutory factors related to "the parties' financial resources, needs, and their relative abilities to become or remain self-supporting following divorce." Jenike, 2004 VT 83, ¶ 9.

Although the court found that wife would be able to support herself within several years, its finding does not appear to be tethered to the parties' established standard of living. See Klein v. Klein, 150 Vt. 466, 476 (1988) (explaining that "rehabilitative maintenance alone would not be sufficient unless the court can find, based on the evidence, that defendant will be able to support herself at the standard of living established during the marriage"). Per the court's findings, wife can complete her training as a medical transcriptionist and earn a total of $40,000 per year, including her military disability benefit. In the meantime, the court found that husband's earning capacity would remain at $80,000 per year . The court's award contemplates that after seven years, husband's gross income will be double wife's and he will have no further spousal maintenance obligation.

Given the other factors relied upon by the court, its spousal maintenance award may be within its discretion in the face of a relatively equal property division, or a property division favoring wife. There is no rule requiring permanent maintenance in a long-term marriage; rather, the court is required to consider the relevant factors in each case and determine whether maintenance is appropriate and for what duration:

> The court is authorized to award maintenance in an amount and for a time as "the court deems just" after considering all relevant factors, including the recipient party's financial resources and ability to meet his or her needs independently, the time and expense necessary for that party to obtain any needed education to find appropriate work, the standard of living established during the marriage, the duration of the marriage, the age and physical and emotional condition of each spouse, the ability of the spouse from whom maintenance is sought to meet his or her reasonable needs while meeting those of the recipient spouse, and the effect of inflation on the cost of living.

Molleur v. Molleur, 2012 VT 16, ¶ 21, 191 Vt. 202.

But in the face of a property division apparently skewed so severely in husband's favor, the court's spousal maintenance award is not so generous as to counterbalance any inequity in the property division. On remand, the trial court should make findings concerning the value of the

pension to the extent that it can.  In light of its findings, it may provide further support for its existing award, may amend its property division, and/or may amend the spousal maintenance award.

Wife's final argument concerns husband's life insurance policies.  Wife asked the court to require husband to maintain the children as beneficiaries of these polices and husband did not object.  The court accordingly included this requirement in the order.  In a motion to amend, wife requested that the court order husband to provide an insurance binder proving that the children are beneficiaries of the life insurance policies with a requirement that wife be notified if the policy payments are delinquent.  The court denied the request without explanation.  Wife does not cite to anything in the record documenting her request for such security prior to the close of evidence.  The trial court did not abuse its discretion in failing to award newly requested relief to wife post judgment.

Reversed and remanded.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice