VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-115



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2023

Sean Seguin\* v. Hannah Brown

}   APPEALED FROM:
}   Superior Court, Rutland Unit,
}   Family Division
}   CASE NO. 22-DM-00631
     Trial Judge: David A. Barra

In the above-entitled cause, the Clerk will enter:

Father appeals a final divorce order.  On appeal, father argues that the court erred by changing the last name of the parties' minor child to reflect both parties' last names, failed to make sufficient findings to support the parent-child contact schedule, and abused its discretion by enforcing agreements signed by the parties before and during their marriage regarding division of assets.  We affirm.

The court found the following.  The parties were married in September 2018 and have one child, born in 2017.  The parties lived at property in Orwell purchased by mother until their separation.  Mother later also purchased property in Benson with her funds.  Father owned a solid-waste removal business called Seguin Services, LLC.  Before the marriage, the parties executed a prenuptial agreement in which they agreed to separate certain assets from the marital property, providing father with full ownership of Seguin Services and mother with sole interest in her retirement savings and the Orwell property.  In 2021, the parties executed a postnuptial agreement reaffirming their prior agreement and adding the Benson property to mother's property excluded from the marital estate.  The parties separated in January 2022.  Father had gross income exceeding $237,000 in 2020, and at the time of the final hearing was closing the business and was employed by OMYA.  Mother worked as a registered nurse prior to and during the marriage and after the separation.

The court found that no spousal maintenance was appropriate for either party since they were both able to meet their reasonable needs at the standard established during the marriage.

As to property distribution, the court found that, on many factors, the parties were neutral because the marriage was short-term, both parties were relatively young and in good physical health, both parties were able to work, and both parties contributed to the marriage and had similar opportunity for capital acquisition and income.  The court also considered the fact that the parties' child continued to live in the marital home and was well established in her routine, and father's behavior primarily caused the breakup of the marriage.  The parties had no assets

not covered by their agreements. The court granted each party the personal property in their possession and financial accounts in their own names. The court enforced the pre- and postnuptial agreements made by the parties, awarding Seguin Services to father and giving mother her retirement account and the Orwell and Benson properties. The court found that the agreements were entered freely and voluntarily after the parties had an opportunity to review the terms and seek independent advice and that there was no evidence that mother coerced father into signing either one.

As to parental rights and responsibilities, the court weighed the statutory factors and found that they favored mother. The court found that the parties loved their daughter and were similarly able to provide for her needs and both had difficulty fostering a positive relationship with the other party. However, the court found that mother was more responsible for their daughter's care and was the primary care provider, and that their daughter was safe and secure living in mother's house and disrupting her routine would not be in her best interests. The court awarded mother sole legal and physical responsibilities with parent-child contact for father one weeknight and one overnight on weekend. The court made father's overnight contact contingent on several things, including him engaging in counseling to address his anger, post-traumatic stress disorder, and depression. Finally, the court granted mother's request to change their daughter's last name to incorporate both parents' last names. Father appeals.[1]

On appeal, father first argues that the family division erred by changing the name of the parties' daughter. Father asserts that the family division lacked subject-matter jurisdiction because the probate division has sole statutory authority to change a name. Father further argues that even if the family division is empowered to make a name change, the court was required first to engage in a factual analysis as to whether the change was in the child's best interest.

The court acted well within its authority in changing the child's last name. As mother points out, the family division is specifically authorized by statute to change a child's last name if the request is made in a divorce complaint. See 15 V.S.A. § 559 ("The court may change the names of the minor children of divorced parents when application for that purpose is made in the complaint for divorce.").[2] The family division properly exercised this statutory authority by changing the last name of the parties' minor daughter to a hyphenated last name with both parents' last names where application for that change was made with the divorce pleading. Contrary to father's assertion, the statute does not require a finding that the name change is in the minor's best interests.

Father next asserts that the court failed to make sufficient findings to support its parent-child contact schedule, alleging that the plan does not provide adequate time to him, fails to specify a holiday schedule, and imposes unsupported conditions on his contact. The family division has "broad discretion" regarding parent-child contact, and "we will not disturb its decisions unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Weaver v. Weaver, 2018 VT 38, ¶ 15, 207 Vt. 236 (quotation omitted). In setting parent-child contact, the court must consider the child's best

---

[1] Mother argues that father filed his appellant's brief one day late and therefore moves for the appeal to be dismissed. Father's brief, filed one day late, is accepted as timely filed and the motion is denied.

[2] Despite the direct relevance of this statute, father failed to cite to it in his appellate brief.

2

interests pursuant to the statutory factors in 15 V.S.A. § 668(a). "We give broad discretion to the trial court's weighing of the evidence; that a different weight or conclusion could be drawn from the same evidence may be grist for disagreement but does not show an abuse of discretion." Lee v. Ogilbee, 2018 VT 96, ¶ 15, 208 Vt. 400 (quotation and alteration omitted).

Father argues that he should be permitted maximum continuing physical and emotional contact with his daughter and that here the evidence does not show harm would result from having more time with father. Father relies on the legislative policy expressing a desire for "minor child to have the opportunity for maximum continuing physical and emotional contact with both parents." 15 V.S.A. § 650.

The parent-child contact schedule here does not violate the statutory directive to maximize contact with both parents and is supported by the court's findings. Under the order, father has contact one overnight during the week and another on the weekend, amounting to about half of the time on the weekend and a little more than a quarter of the time overall. In a similar case, this Court concluded that this level of contact did not contravene the statutory purpose of § 650. See Bancroft v. Bancroft, 154 Vt. 442, 449 (1990) (concluding that contact schedule providing father with contact amounting to fifty percent of time on weekends and vacations and twenty-five percent overall "did not offend § 650"). Moreover, the schedule is supported by the court's findings regarding the best interests of the child under § 665(b). Although the parties were both able to provide love, affection, and guidance to their daughter, mother was the primary care giver, was more responsible for the child's care and development, and was more involved in meeting the child's needs. In addition, the child was safe and secure in mother's home, and a disruption of her routine was not in her best interests. These findings all support the court's schedule, which provides father with time during the week and on the weekends while minimizing disruption to the child's schedule.

Similarly, the court did not err in declining to delineate a holiday schedule for contact with each parent. The court adopted a schedule that provided consistency to the child without specifying how holidays and vacations should be split between the parties. Given the court's finding that consistency was important, this schedule was not unreasonable. See Weaver, 2018 VT 38, ¶ 15 (explaining that parent-child contact schedule will be affirmed unless clearly unreasonable).

Father also contends that the court's requirements for overnight contact, including anger counseling, alcohol restrictions, and firearm prohibitions are not supported by the evidence. Father contends that these restrictions were part of the temporary order and not linked to current evidence regarding the child's best interests. The family division has discretion to design a parent-child contact schedule; its findings of fact will be affirmed "unless they are clearly erroneous, and we uphold the court's legal conclusions if they are supported by the findings." DeSantis v. Pegues, 2011 VT 114, ¶ 26, 190 Vt. 457. Here, the court's findings supported the restrictions in the order. These findings included that during the marriage father had issues with drinking excessively, made threats to kill himself, and hit himself in the head in frustration or anger in front of the parties' child. Father's behavior raised concerns about his ability to provide a safe environment. Although a different court may have weighed this evidence differently based on the passage of time, the court acted within its discretion in assessing the evidence and making the decisions it did. See id. (explaining that family court assesses credibility of witnesses and weight of evidence and may draw reasonable inferences from evidence).

Finally, father contends that the court abused its discretion in enforcing the parties' pre and postnuptial agreements. A prenuptial agreement is enforceable unless it is "unconscionable at the time it is executed." Bassler v. Bassler, 156 Vt. 353, 361 (1991). To determine enforceability the court considers whether the parties made a "fair and reasonable disclosure" of their financial status, whether the agreement was entered voluntarily and freely, and the substantive provisions of the agreement. Id. Here, the family court found that there was no reason not to enforce the agreements. The parties made disclosures of all property and no financial information was hidden. Both parties had an opportunity to seek counsel and neither had greater bargaining power than the other. There was no evidence of coercion or duress. The terms of the agreement were fair in that father was awarded his business and mother retained property in her possession prior to the marriage or acquired with her retirement funds as to the Benson property. Moreover, during the marriage the parties reaffirmed their prenuptial agreement, confirming their mutual desire to divide assets in that manner.

Father's arguments on appeal provide no grounds to disrupt the family court's decision. There is no merit to father's argument that the agreements are ineffective because the parties did not disclose the value of the assets involved, or that he was disadvantaged by not being represented by counsel. The agreements indicate that the parties disclosed all assets and liabilities and that they waived "any other rights to disclosure." The court found that neither party hid information from the other and that they had adequate time to consider the agreements. The court specifically found that there was no evidence of deception or manipulation as to the prenuptial agreement. Moreover, father presented "no evidence of coercion, fraud, inequality of bargaining position or other indication that [father] was tricked, fooled or manipulated into entering the post-nuptial agreement [and] father was not disadvantaged by his lack of counsel and [had] ample time to determine whether to enter the agreements." The court did not find that father's claims of coercion were credible. We accept this determination and will not second-guess the court's credibility assessment on appeal.

Father's final argument is that the parties abandoned the terms of the post-nuptial agreement through actions taken during the marriage. Father has failed to demonstrate that he properly preserved this argument for appeal by raising it below. Therefore, we do not address it. See Gravel v. Gravel, 2009 VT 77, ¶ 28, 186 Vt. 250 (declining to address argument not raised below).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice