VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-287



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2026

Mary Ann Johnson-Condon\* v.  Michael Condon

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Chittenden Unit,
Family Division
CASE NO. 24-DM-01045
Trial Judge: Laura C. Rowntree

In the above-entitled cause, the Clerk will enter:

Wife appeals the final order of divorce issued by the family division.  We affirm.

The court made the following findings in its order.  Wife is sixty years old, and husband is thirty-nine years old.  Wife has degenerative disc disease that causes pain in her lower back and extremities.  Husband is in good health.

Wife is self-employed as a house cleaner, earning approximately $2300 per month.  She is unable to do this work full-time because of her health issues.  She previously worked in administrative and retail jobs, including as a clerk at grocery stores.  In 2023, she earned $43,000 from cleaning houses and part-time employment at a grocery store.

Husband works full-time for UPS as an overnight tractor-trailer driver.  He has worked for UPS since 2004, and his income has steadily grown over the years.  In 2023 he earned $125,705.

The parties met in 2007.  In 2012, husband moved into wife's apartment and began contributing $500 toward rent.  In 2013, the parties moved into the marital home in Colchester.  Husband purchased the home with no down payment.  At the time of purchase, the deed and mortgage were titled solely in his name.  Husband made virtually all payments toward the mortgage.  He also paid insurance, property taxes, utilities, and other bills associated with the house.  Wife inherited money from her mother in 2015 and used approximately $17,000 of her inheritance to make one mortgage payment, purchase a new washer and dryer and other fixtures such as trim and brick for a walkway, and purchase new furnishings.  Wife also contributed toward household groceries.

During the COVID-19 pandemic, husband obtained an eighteen-month forbearance on the mortgage and stopped making monthly payments even though he continued to work at UPS. In August 2021, he took out a subordinate mortgage through the U.S. Department of Agriculture. In 2022, wife was added to the deed to secure a home equity line of credit (HELOC). The parties used the funds to pay off debt, upgrade the septic system, and make other home improvements.

For most of the marriage, wife was unaware of the finances related to the home. For example, she did not know that husband had obtained a forbearance on the mortgage.

The parties stipulated that the home's current value was $420,000 and that the parties' equity in the residence was $145,507. Husband sought to retain the home. Wife asked to have the property sold and the equity divided between the parties after she was repaid the $17,000 she contributed to improvements.

The parties did not share any bank accounts, and their individual accounts had minimal balances. Husband was eligible to collect a pension from UPS beginning in 2049. He was provided with an estimate of what his monthly pension would be if nothing changed between now and then, which the court found to be highly speculative. Husband also had a 401(k) valued at $8149. Wife had no retirement savings, and neither party had any stocks, bonds, or other investments.

Husband owned four vehicles with outstanding loans of $60,250. The amount of the debt exceeded the value of the vehicles. Wife leased a Honda Accord for $390 per month. Wife had credit card debt totaling $8623 and owed $3981 for a personal loan. Husband had $39,983 in credit card debt and owed $5661 for personal loans. Husband also owed $21,750 to the IRS for failing to pay income taxes in 2019.

The court considered the factors set forth in 15 V.S.A. § 751(b) in deciding how to divide the marital assets. It found that the parties were married for nine years, a relatively short period. The court found that wife could only work part-time cleaning homes due to her health issues but could work other part-time jobs and therefore was underemployed. There was no evidence that either party would be able to earn more than they did in 2023 or expected to acquire future capital assets or income through inheritance or otherwise. Neither party had contributed to the other's education, training, or increased earning power. There were no minor children in the home. Husband had financed the purchase of the home and had paid most of the mortgage and other costs. Wife was added to the deed in 2022 solely for the purpose of obtaining the HELOC; she was otherwise uninvolved with financial decisions relating to the home. Wife had not significantly contributed to the marital home beyond the $17,000 she paid in 2015.

The court awarded the marital home to husband, including the mortgage and other debts. It ordered husband to pay wife $17,000. Each party was to be responsible for the debts in their name. The court declined wife's request to award her half of husband's pension, reasoning that husband would not begin receiving benefits until 2049, the disparity in the parties' ages meant that wife was unlikely to benefit from such an award, and the parties' marriage was shorter than the amount of time that husband had been employed by UPS. Instead, it awarded wife half the current value of husband's 401(k) account. Turning to spousal maintenance, the court found that neither party would be able to maintain the standard of living established during the marriage and observed that both would likely need to make financial sacrifices. Because wife had minimal financial resources and was currently unable to independently meet her needs, the court ordered husband to pay wife $2095 per month for five years.

On appeal, wife claims that the court abused its discretion in awarding husband the marital residence and declining to award her half of husband's pension. Wife asserts that she only received thirteen percent of the marital estate and the trial court did not explain the rationale for such a disparate award. Wife argues that the court erred in finding that this was a short-term marriage and that she could earn $43,000 per year. Wife also challenges the spousal maintenance award as inadequate.

We first address wife's challenge to the property award. Section 751 of Title 15 requires the family division to "equitably divide and assign" marital property and sets forth twelve factors the court may consider. "[A]n equitable division does not necessarily mean an equal one." Lee v. Ogilbee, 2018 VT 96, ¶ 29, 208 Vt. 400. The court has broad discretion in considering the statutory factors and we will uphold its decision "unless its discretion was abused, withheld, or exercised on clearly untenable grounds." Jakab v. Jakab, 163 Vt. 575, 585 (1995). "The court need not specify the weight given to each factor, but is required only to provide a clear statement as to what was decided and why." Id. "We view the family court's factual findings in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and will set aside factual findings only when they are clearly erroneous." Willey v. Willey, 2006 VT 106, ¶ 11, 180 Vt. 421.

The family court considered the statutory factors and its explanation for awarding the marital home to husband was reasonable. The court explained that the most relevant factors to its decision were the parties' liabilities and needs, the court's decision to award spousal maintenance to wife, the party through whom the property was acquired, and the parties' contributions to the acquisition and preservation of the home. 15 V.S.A. § 751(b)(6)-(7), (10)-(11). The court found that husband applied for and obtained financing for the home and it was titled solely in his name until 2022, when wife was added to the deed so that the parties could obtain a loan. Other than the single mortgage payment made by wife, husband paid for all the parties' housing expenses. The parties kept their finances separate, meaning that wife's earnings did not contribute toward the equity in the home. While the court acknowledged that wife's income was approximately one-third of husband's income and she was not likely to earn significantly more, it concluded that this disparity could be addressed with rehabilitative maintenance. Husband also had personal debts totaling approximately $127,644, which nearly equaled the amount of equity in the home. The court concluded that given husband's outsized contributions to the acquisition and maintenance of the home, he was entitled to keep the home but had to pay wife for the $17,000 she contributed in 2015.

The court explained why it weighed husband's role in acquiring and contributing to the property more heavily in reaching its decision. This case is therefore unlike the cases cited by wife, in which we reversed disproportionate awards that were not adequately explained by the family court. Lee, 2018 VT 96, ¶ 33; Harris v. Harris, 162 Vt. 174, 184 (1994); Dreves v. Dreves, 160 Vt. 330, 335 (1993). Where, as here, the court adequately explained its reasoning, we see no abuse of discretion. See Wade v. Wade, 2005 VT 72, ¶¶ 20-23, 178 Vt. 189 (affirming court's award of ninety percent of property to wife on grounds that wife owned and lived in home for six years prior to parties' marriage, wife paid most home expenses during the marriage, and wife contributed nearly all her income to household needs); see also MacCormack v. MacCormack, 2015 VT 64, ¶ 17, 199 Vt. 233 ("A disparate property division is not 'facially inequitable,' and will not be reversed as long as the family court makes adequate findings that are supported by the evidence.").

Wife argues that title to property is "immaterial," 15 V.S.A. § 751(a), and that the court erred in relying on the fact that husband held sole title to the marital home until 2022. However, the court did not simply assign husband the home because it had been titled in his name; rather, its discussion makes clear that it viewed husband as the primary contributor to the acquisition and maintenance of that asset. The statute specifically lists "the party through whom the property was acquired" and "the contribution of each spouse in the acquisition . . . of the respective estates" as factors the court can consider. 15 V.S.A. § 751(b)(10)-(11).

Wife claims that the court should have included the period when the parties cohabitated prior to marriage in determining the length of the marriage. Id. § 751(b)(1). The court may consider the entire length of the parties' relationship in weighing the first statutory factor, but is not required to do so. MacKenzie v. MacKenzie, 2017 VT 111, ¶ 14, 206 Vt. 244. Here, although husband contributed some rent when the parties lived in wife's apartment, the parties maintained separate finances and there was no evidence wife was dependent on husband prior to marriage. The court therefore did not abuse its discretion in focusing on the period when the parties were legally married. See id. (holding same).

Wife further contends that the court should have given more weight to her age and health issues, her lower income and employability, her homemaking contributions, and husband's alleged infidelity and profligate spending. "As the trier of fact, it was the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997). The court expressly considered wife's age, health issues, lower income, and employability, and determined that given the parties' limited assets, these concerns were best addressed in a spousal maintenance award. It also credited wife for her $17,000 contribution from her inheritance. There was virtually no other evidence regarding wife's asserted contributions as a homemaker or "sweat equity." The parties offered brief, conflicting testimony about whether husband had been unfaithful, and there was minimal evidence presented regarding husband's spending habits. Given the lack of evidence, the court did not abuse its discretion in giving these factors little weight. Wife's disagreement with the court's analysis does not demonstrate an abuse of discretion. See Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion).

Wife argues that the court abused its discretion in awarding husband his UPS pension. It is true that "pension rights acquired by a party to a divorce during the course of the marriage constitute marital property and are subject to equitable distribution along with other assets." Milligan v. Milligan, 158 Vt. 436, 439 (1992). Where pension rights have vested but not matured, courts may either assign the pension benefits a present value and distribute them with the other assets, or retain jurisdiction and apportion the benefits when they mature. McDermott v. McDermott, 150 Vt. 258, 260 (1988). Either way, "the court must determine what portion of the entitlement was acquired during the marriage . . . by factoring in the so-called 'coverture fraction.'" Id.

As the trial court explained, the circumstances of this case made it impractical to award wife a share of husband's pension benefits. The only evidence of the value of husband's pension was a letter from the fund administrator which estimated that when husband became eligible to receive his pension in October 2049, his benefit amount would be $4566 per month. The letter stated that because husband's plan did not permit a lump sum distribution for any reason, the fund would not calculate a present value for divorce proceedings. The letter further explained

that because the contributions to the fund were paid by UPS, not husband, they could not be borrowed against, withdrawn, or transferred to an IRA.

Because the court had no evidence of the present value of the pension benefit, it could not distribute it at the time of divorce. The second option—apportioning the benefits when they matured—was clearly impractical in this case because it would require the court to retain jurisdiction over the matter for twenty-four more years, or nearly three times the length of the marriage. Moreover, because contributions were paid by UPS, not husband, there was no evidence from which the court could calculate the coverture fraction. Under these circumstances, the court did not abuse its discretion in declining to award wife a portion of husband's pension.

We turn to the spousal-maintenance award. The family division may award maintenance, "either rehabilitative or long term in nature," when it finds that a spouse "lacks sufficient income or property, or both . . . to provide for his or her reasonable needs" and the spouse "is unable to support himself or herself through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a). "The family court has considerable discretion in determining the amount and duration of maintenance once grounds for the award are established under the statutory criteria, and a maintenance award will be set aside only if there is no reasonable basis to support it." Gravel v. Gravel, 2009 VT 77, ¶ 23, 186 Vt. 250.

Wife argues that the court erred in finding that she made $43,000 in 2023 and in relying on this finding to conclude that she was underemployed at the time of the divorce hearing. The finding is supported by wife's checking account statements, which show that wife deposited approximately $50,000 into her account during 2023. Most of the deposits are from Venmo, Cash App, or mobile deposits, which wife testified represented income from house cleaning. There were also numerous deposits from Martins Food, which wife testified were her paychecks from working at a grocery store. Wife testified that two large deposits of $2847 and $2519 in August and October 2023 were from a loan she took out to pay off her debts. She did not deny that, excluding the two loan deposits, she received slightly less than $45,000 in income from work in 2023. The bank statements also reflect a "trust distribution" of $1041 in April 2023, which it appears the trial court excluded from its estimate of wife's income. Taken together, this evidence supports the court's finding that wife earned approximately $43,000 in 2023. While wife argues that the court failed to account for $6500 in loans she received from family, she testified that she borrowed these amounts to pay for legal fees in the divorce, which was not filed until April 2024. Wife has therefore failed to show that these loan proceeds were included in the court's calculation of her 2023 income.

The court considered the statutory factors and awarded spousal maintenance of $2095 monthly for five years. This amount slightly exceeded the guideline amount for a marriage of nine years, and was on the upper end of the duration guideline. 15 V.S.A. § 752(b)(9). To the extent wife argues that the court abused its discretion in failing to award permanent maintenance, she has failed to demonstrate error. In considering whether maintenance should be time-limited or permanent, the "most important factors . . . are the length of the marriage, the role played by the recipient spouse during the marriage, and the income that the recipient spouse is likely to achieve in relation to the standard of living established during the marriage." Tracey v. Gaboriault, 166 Vt. 269, 277 (1997). Given the relative brevity of the marriage, the fact that wife had always worked outside the home and was presently underemployed, and the court's finding that the parties' financial circumstances meant that neither party would be able to maintain the standard of living established, the court acted within its discretion in declining to

award permanent maintenance.  See id. (affirming time-limited spousal maintenance award where both husband and wife worked in family business and wife had other employment during marriage, business was unlikely to prosper after parties' breakup, and parties' income was likely to be lower after divorce).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Michael P. Drescher, Associate Justice